Dennis GABRIEL, individually and as Trustee of the Estate of Lindsay Marie Gabriel, Deceased, Plaintiff and Appellant,

v.

MINNESOTA MUTUAL FIRE AND CASUALTY and Auto Owners Insurance Company, Defendants and Appellees.

Rhonda RAPP, mother and next friend of Kelley Rapp, a minor, Plaintiff and Appellant,

v.

MINNESOTA MUTUAL FIRE AND CASUALTY INSURANCE COMPANY, American Family Insurance Company, Defendants and Appellees.

Gregory MUND and Roxanne Mund, individually and as parents and natural guardians of Nicole Mund, Plaintiffs and Appellants,

v.

MINNESOTA MUTUAL FIRE AND CASUALTY COMPANY, Defendant and Appellee.

Civ. Nos. 930046 to 930048.

Supreme Court of North Dakota.

Sept. 8, 1993.

William P. Harrie of Nilles, Hansen & Davies, Fargo, for plaintiff and appellant Dennis Gabriel.

James E. Nicolai of Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, MN, for plaintiff and appellant Rhonda Rapp.

Kim E. Brust of Conmy, Feste, Bossart, Hubbard & Corwin, Fargo, for plaintiffs and appellants Gregory and Roxanne Mund.

W. Todd Haggart of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendants and appellees Minnesota Mut. Fire and Cas. Co. and Auto Owners Ins. Co.

Robert S. Cragg and Daniel E. Fobbe of Cragg & Fobbe, Hopkins, MN, for defendant and appellee Minnesota Mut. Fire and Cas. Co.

Paul Robert Aamodt, Fargo, for defendant and appellee American Family Ins.

SANDSTROM, Justice.

A motor vehicle accident resulting in serious bodily injury and death led to this case which requires us to construe provisions of North Dakota's underinsured motorist law. The district court granted summary judgment for the defendant insurance companies. We reverse, concluding:

1. Underinsured motorist policy provisions excluding coverage for accidents involving government vehicles were invalid as contrary to law.

2. The plaintiffs were "legally entitled to collect" from the school district which has limited liability under Minnesota law.

3. Only the amount paid the individual plaintiff, not the total amount the School District's insurance paid to all, should be subtracted from the underinsured motorist benefits otherwise due each plaintiff.

I

On May 5, 1989, Roxanne Mund's automobile was struck from behind by a Chevrolet suburban driven by Malcolm Nygaard. The suburban was owned by Independent School District No. 152 of Moorhead, Minnesota. Nygaard was operating the vehicle as a School District employee. Roxanne, her daughters Nicole and Renee, and several of Nicole and Renee's friends: Lindsay Gabriel, Kelley Rapp, Ann Vonhagen, and Sara Fellows, were on the way to a birthday party when Nygaard struck the Mund vehicle. Lindsay Gabriel suffered serious injuries and died two days after the collision. In addition, the Munds, Kelley Rapp, and Sara Fellows suffered personal injuries.

Several lawsuits were begun. The plaintiffs and the School District's insurance carrier negotiated a settlement of $600,000, the School District's maximum amount of liability under law. The plaintiffs divided that sum among themselves. Lindsay Gabriel's estate received $175,000. Roxanne Mund received $65,000. Nicole Mund received $30,000, and Kelley Rapp received $30,000. Sara Fellows received $240,000. William Fellows and Karla Parkinson received $60,000. Although Sara Fellows, William Fellows, and Karla Parkinson presented a claim for underinsured motorist benefits for injuries received by Sara Fellows, they did not pursue an action against Minnesota Mutual, or their own insurance carrier, and are not parties to this action.

Because the settlement amount did not fully compensate the plaintiffs for their injuries, the Munds, the Gabriels, and the Rapps sued the defendant insurance companies for underinsured motorist benefits. All claimed underinsured motorist coverage under the Munds' policy with Minnesota Mutual Fire and Casualty Company. In addition, Kelley Rapp claimed underinsured motorist coverage under the Rapps' policy with Auto Owners Insurance Company, and Lindsay Gabriel

claimed underinsured motorist coverage under the Gabriels' policy with American Family Insurance Company. The Munds' Minnesota Mutual policy has liability limits of $100,000 per person and $300,000 per accident.

The district court consolidated the three actions and granted the insurance companies' motion for summary judgment. The district court found three alternate rationales for denying coverage to the plaintiffs.

First, the district court concluded the insurance policies excluded from underinsured motorist coverage injuries caused by vehicles owned by any governmental unit, political subdivision, or agency.

Second, the district court found the plaintiffs were not entitled to underinsured motorist coverage because they did not fall within the requirements of N.D.C.C. § 26.1–40–14(2) (Supp.1987), which provides "[u]nderinsured motorist coverage must pay compensatory damages for bodily injury ... or death when an insured is legally entitled to collect from the owner or operator of an underinsured motor vehicle." The district court held, because the School District settled with the plaintiffs for the maximum amount of the School District's liability under Minnesota law, the plaintiffs were not "legally entitled to collect" any more money from the School District.

Finally, the district court found the plaintiffs were not entitled to underinsured motorist coverage because the $600,000 received by the plaintiffs from the School District, was more than the $300,000 single limit underinsured coverage of the Minnesota Mutual policy. The district court held North Dakota's statutory scheme followed a "limits-less-amount-paid" approach under which the amount of liability insurance paid to the plaintiffs should be offset collectively per accident rather than individually per person. Under this approach, the plaintiffs were not entitled to underinsured motorist benefits, because the plaintiffs collectively had received $600,000, which was more than the $300,000 limit in the Minnesota Mutual policy.

All three of the issues raised on appeal are controlled by North Dakota's underinsured motorist statutes as they existed at the time of the accident. *See* N.D.C.C. §§ 26.1–40–13, 26.1–40–14, 26.1–40–15 (Supp.1987).

■ The interpretation of a statute is a question of law, and, as such, is fully reviewable by this Court. *Amerada Hess Corp. v. Conrad,* 410 N.W.2d 124, 128 (N.D.1987). In applying a statute, we first look to the wording of the statute. "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05.

II

The insurance policies provide that an "underinsured motor vehicle" does not include a vehicle owned by a governmental unit. The district court upheld this restriction finding the policy language was unambiguous and consistent with North Dakota public policy. In determining North Dakota public policy, the district court relied upon the fact that on May 5, 1989, the date of the accident, the North Dakota legislature had passed a statute specifically exempting vehicles owned by governmental units from mandated underinsured motor vehicle coverage. *See* N.D.C.C. § 26.1–40–15.1(4)(b). The new statute became effective on July 16, 1989.

■ The district court's reliance on the 1989 change in North Dakota's underinsured motorist law is misplaced. The exclusion for government vehicles was not authorized by the underinsured motorist statute in effect on May 5, 1989. Statutes are generally not retroactive unless expressly declared so by the legislature. N.D.C.C. § 1–02–10; *Reiling v. Bhattacharyya,* 276 N.W.2d 237 (N.D. 1979).

■ The district court misconstrued the issue before it. The issue was not whether the policy exclusion was invalid as against public policy, but whether the exclusion was invalid as an unlawful restriction on North Dakota's statutorily mandated underinsurance coverage.

At the time of the accident, underinsured motorist coverage was mandated by

N.D.C.C. § 26.1–40–14(1) (Supp.1987) which provided:

"No motor vehicle liability insurance policy against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of ownership, maintenance, or use of any motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in amounts not less than those set forth in section 39–16.1–11 for bodily injury or death for the protection of insureds who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, underinsured motor vehicles, and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom."

At the time of the accident, N.D.C.C. § 26.1–40–13(1) (Supp.1987) defined an "underinsured motor vehicle" as:

"[A] motor vehicle for which there is a bodily injury liability insurance policy ... in effect at the time of the accident, the applicable limit of bodily injury liability of which is:

"a. Less than the applicable limit for underinsured motor vehicle coverage under the insured's policy; or

"b. Has been reduced, by payments to persons other than the insured injured in the accident, to an amount less than the limit the insured has for underinsured motorist coverage under the insured's policy."

When §§ 26.1–40–14 and 26.1–40–13 are read together, it is clear that at the time of the accident North Dakota law mandated all automobile insurance policies in the state provide protection, within certain guidelines, from uncompensated injury resulting from accidents involving "underinsured motorists." The statute did not provide an exemption for vehicles owned by governmental units.

We have not previously ruled on the question of whether insurance providers could exclude government owned vehicles from underinsured motor vehicle coverage under the 1987 North Dakota statute. A majority of states which have ruled on this issue have found that such provisions are unlawful restrictions on the mandatory coverage required under statute. *See Vaught v. State Farm Fire & Casualty Company*, 413 F.2d 539, 541 (8th Cir.1969); *Parrish v. Mid-American Fire and Cas.*, 63 Ohio App.3d 1, 577 N.E.2d 1109, 1110 (1989); *Johns v. Liberty Mut. Fire Ins. Co.*, 337 So.2d 830, 831 (Fla.App. 2 Dist.1976); *Hillhouse v. Farmers Ins. Co., Inc.*, 226 Kan. 68, 595 P.2d 1102, 1103 (1979); *McClellan v. Sentry Indem. Co.*, 140 Ariz. 558, 683 P.2d 757, 760 (App.1984). We agree with the reasoning of these cases. Where statute does not provide for an exemption for governmental vehicles, a court will not rewrite uninsured or underinsured motorist coverage to provide for such an exemption. The legislature in drafting N.D.C.C. § 26.1–40–14 intended to protect North Dakota's citizens from injuries caused by underinsured or uninsured motor vehicles.

### III

■ The district court held that the plaintiffs did not fall within underinsured motorist coverage mandated by N.D.C.C. § 26.1–40–14(2) (Supp.1987), because the plaintiffs were not "legally entitled to collect" from Nygaard or the School District. The district court's determination was based on Minnesota statutes, Chapter 466, which sets limits on the tort liability of Minnesota's political subdivisions, including school districts and their officers and employees. *See* Minn.Stat. § 466.-01, Sub. d. 1 (1988). In May 1989, the School District's maximum liability under Minn.Stat. § 466.04 (1988), for any number of claims arising out of a single occurrence was $600,-000.

N.D.C.C. § 26.1–40–14(2) (Supp.1987) provides, in part:

"[U]nderinsured motorist coverage must pay compensatory damages for bodily injury, sickness, disease, or death when an insured is legally entitled to collect from the owner or operator of an underinsured motor vehicle."

The insurance carriers argue the district court's ruling should be upheld because it follows our decisions in *Cormier v. Nat.*

*Farmers U. Prop. Cas.,* 445 N.W.2d 644 (N.D.1989) and *Stuhlmiller v. Nodak Mutual Insurance Co.,* 475 N.W.2d 136 (N.D.1991).

In *Cormier,* the Court was faced with the issue of whether an employee, injured in the scope of her employment, could collect uninsured motorist benefits. The Court concluded:

> "[U]nder workers compensation law, an employee injured in the scope of her employment by the negligence of a coemployee may not recover damages from the coemployee, regardless of the coemployee's fault, because workers compensation benefits are the injured employee's exclusive remedy for work-related injuries against the coemployee. Because workers compensation affords the exclusive remedy against Hope Cormier's coemployee, ... we conclude that Hope Cormier is not 'legally entitled to recover' damages from [the coemployee] and is not entitled to uninsured motorist benefits."

*Cormier* at 647 (citations omitted).

In *Stuhlmiller,* we expanded *Cormier's* rationale to make workers compensation benefits the sole remedy in similar situations involving underinsured motorists.

*Cormier* and *Stuhlmiller* are, however, distinguishable from this case and are not controlling. In both *Cormier* and *Stuhlmiller,* the wrongdoer was immune from liability. The School District is not immune from liability. As we explained in *Stuhlmiller,* the requirement that an insured be "legally entitled to recover" is fulfilled if the insured has a legally enforceable right to recover damages. *Stuhlmiller* at 139. Here, the plaintiffs have a legally enforceable right to recover limited damages from the School District.

We join those courts which have considered this issue and distinguished between situations where the wrongdoer was immune from suit and situations where the wrongdoer's damage liability was limited. *See Michigan Millers Mut. Ins. Co. v. Bourke,* 607 So.2d 418 (Fla.1992); *State Farm v. Estate of Braun,* 243 Mont. 125, 793 P.2d 253 (1990); *Karlson v. City of Oklahoma City,* 711 P.2d 72 (Okl.1985).

This holding furthers the expressed purpose of the underinsured motorist statute, protection of insureds from injuries caused by underinsured motor vehicles. Unlike our holdings in *Cormier* and *Stuhlmiller,* where the claimants had an alternative remedy from workers compensation, the plaintiffs here have no alternative source of recovery. The purpose of the underinsured motorist statute is best served by interpreting the "legally entitled to recover" requirement as barring coverage in cases where the entity causing the injury is immune from suit, not cases where its maximum amount of liability is limited by law.

IV

In construing the offset provisions of N.D.C.C. § 26.1–40–14(3), the district court, relying on *Kothrade v. American Family Mut. Ins. Co.,* 462 N.W.2d 413 (Minn.App. 1990), held that "under ... the so-called 'limits-less-[amount] paid' approach, Hartford's [the School District's insurance company] payment of $600,000.00 should be directly offset against the Defendant's UIM [underinsured motorist] limits. Thus, UIM benefits are not available to the Plaintiffs."

We believe that the district court erred in offsetting the $600,000 collectively as per accident. The $600,000 should be offset per person.

A two-step process determines if the plaintiffs are entitled to underinsured motorist coverage. *Kothrade* at 415; *Broton v. Western Nat'l Mut. Ins. Co.,* 428 N.W.2d 85, 89 (Minn.1988). First, determine if the School District's vehicle is an "underinsured motor vehicle" as defined by North Dakota law. Second, if it is an "underinsured motor vehicle," apply North Dakota's offset provision to determine whether the plaintiffs are entitled to collect benefits from the insurance providers.

N.D.C.C. § 26.1–40–13(1) (Supp.1987) defined an underinsured motor vehicle as:

> "1. 'Underinsured motor vehicle' means a motor vehicle for which there is a bodily injury liability insurance policy, or bond providing equivalent liability protection, in effect at the time of the accident, the

applicable limit of bodily injury liability of which is:

"a. Less than the applicable limit for underinsured motor vehicle coverage under the insured's policy; or

"b. Has been reduced, by payments to persons other than the insured injured in the accident, to an amount less than the limit the insured has for underinsured motorist coverage under the insured's policy."

In accidents involving multiple claimants, each of the persons injured is an "insured" under N.D.C.C. § 26.1–40–13(1)(b). *See* N.D.C.C. § 26.1–40–14(4) (Supp.1987); *c.f.* N.D.C.C. § 26.1–41–06(2) (Supp.1987). Here, each of the plaintiffs received less than total compensation for injuries from the School District's insurance company, even though the School District's insurer paid its policy limit. Because the amount received by each plaintiff is less than the Minnesota Mutual underinsured motorist limit of $300,-000, the School District's vehicle is an "underinsured motor vehicle," under N.D.C.C. § 26.1–40–13(1)(b).

N.D.C.C. § 26.1–40–14(3) (Supp.1987), controlled the amount of underinsured benefits available to the plaintiffs. N.D.C.C. § 26.1–40–14(3) provides:

"The liability of the insurer providing underinsured motorist coverage cannot exceed the limits of the underinsured motorist coverage stated in the policy, and the maximum liability of the underinsured motorist coverage is the lesser of:

"a. The difference between the amount paid in compensatory damages to the insured by and for any person or organization who may be legally liable for the bodily unjury [sic], sickness, disease, or death resulting therefrom, and the limit of underinsured motorist coverage; or"

■ Under § 26.1–40–14(3) when an "underinsured motor vehicle is involved," the insurer providing underinsured motorist coverage is liable for the difference between the amount paid to the insured by the underinsured motor vehicle's carrier, and the limit of the underinsured motor vehicle policy.

We conclude "the insured" in § 26.1–40–14(3)(a) references each covered individual. This reading is consistent with the plain, unambiguous language of § 26.1–40–14(3)(a), and is consistent with the definition of "underinsured motor vehicle" as found in § 26.1–40–13(1)(b). To read "the insured" in any other manner would render § 26.1–40–13(1)(b) largely meaningless. We do not construe statutes in such a manner. *See* N.D.C.C. § 1–02–07.

We have reviewed *Kothrade,* and the other cases relied upon by the insurance carriers for the proposition that underinsured motorist benefits should be computed on a per accident basis, and find them unpersuasive in light of the specific language in North Dakota's underinsured motorist statute.

The judgments of the district court are reversed, and this matter is remanded for further proceedings consistent with this opinion.

VANDE WALLE, C.J., MESCHKE and NEUMANN, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of LEVINE, J., disqualified.