COLONIAL INSURANCE COMPANY
OF CALIFORNIA, Plaintiff,

v.

Derek TUMBLESON, et al., Defendants.

No. A94–184 CV (JKS).

United States District Court,
D. Alaska.

July 7, 1995.

---

Eric P. Gillett, Oles, Morrison & Rinker, Seattle, WA, for plaintiff.

George M. Kapolchok, Law Offices of George M. Kapolchok, Anchorage, AK, for defendants.

## ORDER FROM CHAMBERS

### (Reconsideration)

SINGLETON, District Judge.

### I. INTRODUCTION

In this action for declaratory judgment, Colonial Insurance Company of California ("Colonial") seeks a declaration that it is not obligated to pay the claims of Derek Tumbleson and his family ("Tumblesons") under the uninsured/underinsured ("UM/UIM") coverage of the auto insurance issued to them by Colonial. Both parties moved for summary judgment (Docket Nos. 3 & 5) and the Court issued a decision in favor of Plaintiff, declaring that the Tumbleson's cannot recover under the UIM policy issued by Colonial. Docket No. 24 (published at 873 F.Supp. 310 (D. Alaska 1995)). The Tumblesons, specifically Derek, Laurie, and Kristin, request that the Court reconsider its decision. Docket No. 29; *see* Motion for Reconsideration at Docket No. 35.

Jurisdiction in this case is based on diversity of citizenship. 28 U.S.C. § 1332. This Court's authority to grant declaratory judgment is found in 28 U.S.C. § 2201. Since jurisdiction is based on diversity of citizenship, the Court looks to Alaska law for guidance in interpreting statutes and constitutional provisions. *State Farm Mut. Auto Ins. Co. v. Davis*, 937 F.2d 1415 (9th Cir. 1991).

### II. BACKGROUND FACTS

On May 9, 1993, David Schram ("Schram") rear-ended Derek Tumbleson's 1990 Pontiac with his 1990 Chevrolet pickup truck. Injured in the accident were husband Derek

Tumbleson, wife Laurie Tumbleson, and the Tumbleson children, Andrew, Deanna, and Kristin. At the time of the accident, Schram's vehicle was insured by State Farm with liability coverage limits of $100,000/$300,000 (per person/per occurrence). The Tumblesons' vehicle was insured by Colonial. The Tumblesons' policy included liability coverage with limits of $50,000/$100,000. Docket No. 5 at 2, Exhibit 1, p. 1. For an additional premium, the Tumblesons also purchased UM/UIM coverage with limits of $50,000/$100,000. *Id.* at Exhibit 2, p. 1. State Farm paid the policy limit of $300,000 to the Tumblesons in the following manner:

$100,000 plus interest & Rule 82 attorney fees to Andrew

$100,000 plus interest & Rule 82 attorney fees to Deanna

$ 92,500 plus interest & Rule 82 attorney fees to Derek & Laurie (combined)

$ 7,500 to Kristin

The amounts received by the Tumblesons are allegedly insufficient to fully compensate them for their injuries. Docket No. 5. Each therefore made a claim for UIM coverage and Colonial sought a declaration from this Court that the UIM policy does not afford coverage. The Colonial policy in effect at the time of the accident is similar to Alaska's UIM statute. The differences are purely semantic. *See* ALASKA STAT. § 28.20.445. The triggering mechanism of the statute, section (h), provides:

(h) **"Underinsured motor vehicle" means a motor vehicle** licensed for highway use with respect to the ownership, operation, maintenance, or use of which motor vehicle there is a **bodily injury** or property damage **insurance policy** or a bond applicable at the time of the accident and the amount of insurance or bond

(1) **is less than the limit for uninsured and underinsured motorists coverage under the insured's policy; or**

(2) has been reduced by payments to persons other than **an insured,** injured in an accident, to less than the limit for uninsured and underinsured motorists coverage under the insured's policy.

ALASKA STAT. § 28.20.445(h) (emphasis added). The sections of the statute that determine the amount of coverage, sections (a) and (b), provide:

(a) The maximum liability of the insurance carrier under the uninsured and underinsured motorists coverage required to be offered under AS 28.20.440 shall be the lesser of

(1) the difference between the amount of the covered person's damages for bodily injury and property damage and the amount paid to the covered person by or for a person who is or may be held legally liable for the damages; and

(2) the applicable limit of liability of the uninsured and underinsured motorist coverage.

(b) An amount payable under the uninsured and underinsured motorist coverage shall be excess to an amount payable under automobile bodily injury, death, or medical payments coverage, or as workers' compensation benefits and may not duplicate amounts paid or payable under valid and collectible automobile bodily injury, death, or medical payments coverage, or as workers' compensation benefits.

ALASKA STAT. §§ 28.20.445(a) and (b).

## III. PROCEDURAL HISTORY

In its Order dated January 20, 1995, the Court determined that UIM coverage is not triggered because neither subsection (h)(1) nor (h)(2) is satisfied. Docket No. 24. Section (h)(1) is not satisfied because Schram's liability policy limits ($100,000/$300,000) are greater than the Tumblesons' UIM policy limits ($50,000/$100,000). Section (h)(2) is not satisfied because Schram's liability carrier made payments to each of the Tumblesons, and nobody else. The tortfeasor's available policy limit was therefore not reduced by payments to persons other than an insured. The Court also rejected the Tumblesons' argument that section (h) should be judicially repealed because the legislature, in amending the UM/UIM statute and adding section (b), inadvertently forgot to repeal

section (h). The Court refused to impliedly repeal section (h), determining, *inter alia,* that sections (b) and (h) can be read together to produce a reasonable result. The Tumblesons then moved the Court to consider a late filed motion for reconsideration. Docket No. 29. The Court accepted the Tumblesons' motion to file late and now considers the merits of their claims. *Id.; see* Motion for Reconsideration at Docket No. 35.

## IV. DISCUSSION

■ In their motion for reconsideration, the Tumblesons argue that even if section (h) is dispositive of whether UIM coverage is triggered, Derek, Laurie, and Kristin Tumbleson are nonetheless entitled to UIM coverage because each settled for less than $50,-000, the per person limit under the Colonial UIM policy. The Tumblesons reason that the Court erred in its section (h) analysis by comparing the Tumblesons' collective $300,-000 settlement to the $100,000 per occurrence UIM limit rather than comparing the individual settlement amounts to the $50,000 per person UIM limit. Docket No. 35 (citing *Gabriel v. Minn. Mut. Fire and Cas.,* 506 N.W.2d 73 (N.D.1993) for the proposition that an insured is entitled to UIM coverage whenever she receives settlement from the liability carrier and such settlement is less than the individual UIM limit). The Tumblesons argue that Derek, Laurie, and Kristin are entitled to coverage under the Colonial UIM policy because they each settled for an amount less than the individual UIM limit and because they are each not fully compensated for the injuries suffered. *Id.*

The Court has reviewed Defendants' motion, re-examined *Gabriel v. Minn. Mut. Fire and Cas.,* studied the recent UIM decisions issued in this District, and affirms the conclusion and reasoning contained in the Order at Docket No. 24. The Court's discussion is separated into three sections. The Court

examines, in the first section, the Tumblesons' argument that Derek, Laurie, and Kristin are entitled to recover under the Colonial UIM policy because they have not been fully compensated for the injuries they suffered. In the course of this examination, the Court explains the application of section (h)(1). The significance of the phrase "an insured," contained in section (h)(2), is examined in the second section. The third section consists of an examination of the recent UIM decision by Chief Judge Holland issued after this Court's Order at Docket No. 24.[1]

### A. *Triggering Mechanism in Section (h)(1).*

An insured seeking coverage under her UIM policy will not receive UIM coverage if the UIM policy limit is less than the limit of the tortfeasor's liability policy. ALASKA STAT. § 28.20.445(h)(1). As stated above, the tortfeasor's policy limit is $100,000/$300,000 and the UIM limit is $50,000/$100,000. Since the limits of the liability policy are greater than the limits of the UIM policy, UIM coverage is not triggered.

Although the statute is unambiguous and the Court has determined that it should not be considered repealed by implication, the Tumblesons argue that a coverage determination should be made based upon a comparison between the amount each individual Tumbleson received in settlement and the $50,000 per person UIM limit. Docket No. 35. If the settlement amount is smaller, argue the Tumblesons, then coverage should exist. *Id.* The Tumblesons do not articulate a rationale for their conclusion, but appear to rely on a North Dakota case cited by this Court in its original Order. *See id.* (citing *Gabriel v. Minn. Mut. Fire and Cas.,* 506 N.W.2d 73 (N.D.1993)). Interpreting a statute identical to ALASKA STAT. § 28.20.445(h), the North Dakota court opined:

Here, each of the plaintiffs received less than total compensation for injuries from

1. Following the issuance of this Court's Order at Docket No. 24 and Chief Judge Holland's decision in *Kvasnikoff v. Allstate Ins. Co.,* Case No. A94–0318 CV (HRH), Docket No. 19, 1995 WL 251164 (D. Alaska March 20, 1995), Judge Sedwick issued a decision on the same topic. *See Colonial Ins. Co. v. Manzonie,* Case No. F94–0022 CV (JWS). Judge Sedwick adopted, by

reference, the reasoning employed by Judge Holland in *Kvasnikoff,* predicting that the Supreme Court of Alaska would repeal ALASKA STAT. § 28.20.445(h). Since the reasoning of Judge Holland and Judge Sedwick is the same, the third section of this Order addresses only the *Kvasnikoff* decision.

the School District's insurance company, even though the School District's insurer paid its policy limit. Because the amount received by each plaintiff is less than the Minnesota Mutual underinsured motorist limit of $300,000, the School District's vehicle is an 'underinsured motor vehicle,' under N.D.C.C. § 26.1–40–13(1)(b).

*Gabriel,* 506 N.W.2d at 78. In *Gabriel,* Nygaard, who was insured by an independent school district with liability policy limits at $300,000/$600,000, struck Mund with his Chevrolet Suburban causing injury to Mund and several children. *Id.* at 74–75. Mund was insured by Minnesota Mutual with UIM limits at $100,000/$300,000. The court concluded that the children were entitled to UIM coverage because each **individual** child (UIM insured) was compensated in an amount less than $300,000 (the **per occurrence** amount of the UIM policy). In the case at issue, this conclusion would be equivalent to stating that the Tumblesons are entitled to UIM coverage because each Tumbleson was compensated less than $300,000 (the per occurrence amount of the UIM policy). The North Dakota court's reasoning on this issue is unsound. The statute is clearly contrary.

ALASKA STAT. § 28.20.445(h)(1) states that UIM coverage is triggered if the tortfeasor's liability **policy limits** are less than the claimant's UIM **policy limits.** Coverage is not dependent upon a comparison between the settlement amount and the UIM policy limit; it is incorrect to make such a comparison. *See* ALASKA STAT. § 28.20.445(h)(1). Not only did the North Dakota Supreme Court err by comparing settlement amounts to policy limits, but it also erred by comparing the individual settlement amounts to the per occurrence limit of the UIM policy. The only logical conclusion one can make when reading the passage written by the North Dakota Supreme Court is that it ignored the statutory language in order to reach a more emotionally satisfying, although less jurisprudentially sound, result. It appears that many children were badly injured in the wreck and were in great need of medical assistance. The North Dakota decision is therefore not persuasive.

*B. "The" insured versus "an" insured*

Under ALASKA STAT. § 28.20.445(h)(2), an insured claiming coverage under her UIM policy may recover if the tortfeasor's liability coverage has been reduced by payments to persons other than an insured to the extent that the amount remaining from the tortfeasor's liability policy is less than the amount of the UIM policy. If the tortfeasor's policy is reduced to the point that the available limit is less than the UIM limit, then UIM coverage is triggered. *Id.* In this case, the Tumblesons were the only persons in receipt of payment from the tortfeasor's policy. The payments reduced the policy to zero, leaving only the UIM policy available, if triggered. The meaning of the phrase "reduced by payments to persons other than an insured" in section (h)(2) is therefore determinative to UIM coverage. ALASKA STAT. § 28.20.445(h)(2) (emphasis added).

If the Court treats "an" as an indefinite article, therefore broadening the scope of the term insured to include "any" insured, then UIM coverage is precluded in this case because each Tumbleson was insured under the Colonial policy. On the other hand, if the Court treats "an" as a definite article, restricting "an insured" to mean the insured seeking UIM coverage, then each Tumbleson can claim that the payments to the other Tumblesons act to reduce the tortfeasor's policy. In the case of Derek, Laurie, and Kristin, such an application would reduce the policy to an amount less than the UIM policy, thus triggering UIM coverage.

The Alaska Supreme Court has addressed this issue. "Generally, the most reliable guide to the meaning of a statute is the words of the statute construed in accordance with their common usage." *Homer Elec. Ass'n v. Towsley,* 841 P.2d 1042, 1043–44 (Alaska 1992) (citing *Lagos v. City & Borough of Sitka,* 823 P.2d 641, 643 (Alaska 1991)). Blacks Law Dictionary defines 'an' in the following manner: "The English indefinite article, equivalent to 'one' or 'any'; seldom used to denote plurality." BLACKS LAW DICTIONARY 84 (6th ed. 1990). Blacks defines "the" in the following manner: "In construing statute, definite article 'the' particularizes

the subject which it precedes and is word of limitation as opposed to indefinite or generalizing force 'a' or 'an'." *Id.* at 1477.[2] The interpretation in this case is much simpler than the interpretation faced by the Alaska Supreme Court in *State v. Houston Cas. Co.*, 797 P.2d 1200 (Alaska 1990). Here, the Court need not determine whether "the insured" can mean more than just one insured. To the contrary, the Court must determine whether "an insured" means any person insured under the policy. Ordinary usage of the words "the" and "an," combined with the reasoning provided by *Houston,* leads to the conclusion that the term "an" insured shall be interpreted to include each of the Tumblesons. Under this interpretation, the Tumblesons are not entitled to UIM coverage. Payments from the tortfeasor's policy were not made to persons other than an insured; they were made to insureds, the Tumblesons. Therefore, the tortfeasor's policy limit was not reduced to the point that UIM coverage was triggered.

*C. Recent Decisions in this District*

Shortly after this Court issued its opinion, Judge Holland, Chief Judge of this District, issued a contrary decision which judicially eliminates one of the applicable sections of ALASKA STAT. § 28.20.445. *See Kvasnikoff v. Allstate Ins. Co.*, Case No. A94-0318 CV (HRH), Docket No. 19, 1995 WL 251164 (D. Alaska March 20, 1995). In departing from this Court's reasoning, Judge Holland concludes this Court erred in determining that sections (b) and (h) can be read together and still produce reasonable results. *Id.* at 29. Judge Holland determined that "[r]eading the statutes together allows absurd results ... which are arbitrary, inequitable and unreasonable." *Id.* at 18, 23, & 29. This

Court, on reconsideration, has had an opportunity to review Judge Holland's decision and respectfully finds that the law is correctly applied in this Court's prior Order. Judge Holland correctly cites the applicable law of the State of Alaska regarding the standards to be satisfied in order for the judiciary to repeal legislation by implication. However, his application of the law to ALASKA STAT. § 28.20.445 fails to comport with the standards cited.

At the outset, it is important to identify those areas where my analysis and that of Chief Judge Holland and Judge Sedwick are in accord. First, we agree that the plain meaning of the statutes as articulated by the legislature point to the result I have reached. Second, we agree that the ordinary standards utilized by courts to interpret and construe statutes do not change the result. To all three, the decision articulated in this decision is the only one possible in light of the existing statutes. Our disagreement turns on the propriety of reading ALASKA STAT. § 28.20.445(h) out of the statute entirely. But even in this area we have substantial agreement. We agree that the legislature, if it desired to do so, could have repealed section (h). We agree that it did not. We also agree that this Court has no license to rewrite legislation in order to achieve goals which we think the legislature should have reached but did not. A judge has no authority to "repeal" inconvenient legislation, no matter how foolish, wrongheaded, or socially undesirable it may appear to him. The legislature, and it alone, has the power to enact and repeal legislation. Finally, we agree that in some very rare circumstances a legislature will enact legislation that is so at odds with earlier legislation, so irreconcilable with

---

**2.** In 1990, the Supreme Court of Alaska analyzed the meaning of the phrase "the insured" contained in a policy of insurance. *State v. Houston Cas. Co.*, 797 P.2d 1200 (Alaska 1990) (5–0 decision, with Justices Matthews and Burke concurring). The majority determined that "the insured" should be construed to include the named insured and any other insured. *Id.* at 1203 (citing *Marwell Constr v. Underwriters at Lloyds, London,* 465 P.2d 298, 304–05 (Alaska 1970)). The concurrence disagreed, asserting that the term "the" is a definite article which limits the scope of "insured" to *"only* the person claiming

coverage." *Id.* at 1205–06 (J. Matthews, concurring) (emphasis in original). In their concurrence, Justices Matthews and Burke provided a thorough discussion of the phrases "the insured" and "an insured." *Id.* (citing N. Risjord & J. Austin, *Who is "The Insured" Revisited,* 28 INS. COUNS.J. 100). Justice Matthews agreed with Risjord and Austin, stating that " 'the insured' means, and means *only,* the *person claiming coverage,* or to put it another way, *only* the person for whom coverage is the issue." *Id.* (quoting Risjord & Austin) (emphasis in original).

an earlier statute, that no rational person acting as a competent legislator could have missed the inconsistency and failed to delete the offending earlier statute. In such a case, and in only such a case, where the only possible conclusion is that the legislature did in fact agree to repeal the earlier statute but through ignorance, incompetence, or if we sugar coat with euphemism, an oversight, failed to carry its clear intention into effect by expressly repealing the offending statute, may we find an implied repeal of the offending statute and ignore it in order to reach the true intent of the legislature. As we shall see, courts are very hesitant to find repeal by implication because to do so, however euphemistically stated, is to deliver a stunning rebuke to a coordinate branch of government, the branch popularly elected by the people. What greater insult to a plumber than to publicly announce she cannot plumb? What more unwelcome reproach to a carpenter then to say she cannot carpenter? How demeaning to a legislator to imply she cannot effectively legislate? And yet, it is precisely this latter determination that underlies every judicial conclusion that the legislature has repealed a statute by implication.

When we encounter apparent ambiguities and uncertainties in legislation, experience teaches that it is rare, if ever, the result of incompetence. More often it is a natural consequence of the legislative process. It is rare to find significant legislation universally popular. Difficult decisions generally call forth special pleaders on both sides armed with threats of punishment at the polls and sugar coated promises of garnerable contributions. Politics is the art of compromise. While lawyers and judges would no doubt prefer clear, unequivocal legislative direction, a wise legislator's political survival frequently calls for more delphic instruction so that both opponents and proponents of legislation can,

in good conscience, claim a partial victory in the press that could not be won in the legislative halls. A satisfactory resolution of intended ambiguity can later be sought in courtrooms, where the resident decision-makers are at least freed of re-election jitters. Legislative ambiguity is not, however, a license to judicial legislation. The limits of repeal by implication have been clearly set by our state supreme court and we are obligated to adhere to those limitations.

The standards governing repeal by implication have long been established in the State of Alaska. *Id.* at 15–16; *see Peter v. State,* 531 P.2d 1263–68 (Alaska 1975) (repeal by implication is not favored).[3] Repeal by implication is limited, and is proper only when necessary to carry out the legislature's intent. *Peter,* 531 P.2d at 1263–68; *see also Warren v. Thomas,* 568 P.2d 400, 402 (Alaska 1977). If there exists any reasonable interpretation that will give effect to both statutes, the court may not treat the statute as impliedly repealed. *Peter,* 531 P.2d at 1267. Each section of a statute should be read together with every other section so as to produce a harmonious whole. *City of Anchorage v. Scavenius,* 539 P.2d 1169, 1174 (Alaska 1975). The Alaska Supreme Court, however, does not mechanically apply the plain meaning of a statute in disregard of legislative intent. *Peninsula Marketing Ass'n v. State,* 817 P.2d 917, 922 (Alaska 1991) (citing *Alaska Pub. Employees Ass'n v. City of Fairbanks,* 753 P.2d 725, 727 (Alaska 1988)). Instead, the court has adopted a sliding scale approach toward statutory interpretation. *Id.* Under this approach, "[T]he plainer the language of the statute, the more convincing any contrary legislative history must be." *Id.* (citing *State v. Alex,* 646 P.2d 203, 208 n. 4 (Alaska 1982)).

---

3. The Alaska Supreme Court has expressly adopted the two types of implicit repeal outlined by the United States Supreme Court. *Peter v. State,* 531 P.2d 1263, 1267 (Alaska 1975) (citing *Posadas v. Nat. City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936)).

[There are] two well-settled categories of repeal by implication—(1) where provisions in the two acts are in irreconcilable conflict, the latter act to the extent of the conflict consti-

tutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act.

*In re Glacier Bay,* 944 F.2d 577, 581 (9th Cir. 1991) (quoting *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976) (quoting *Posadas,* 296 U.S. at 503, 56 S.Ct. at 352)).

Judge Holland begins his interpretation of ALASKA STAT. § 28.20.445 by correctly reciting the method by which Courts are to interpret insurance statutes:

Courts faced with disputes over UIM coverage must address two threshold issues: (1) whether UIM coverage has been "triggered" in a particular instance because the insured's injuries were caused by an underinsured motor vehicle; and (2) if coverage has been triggered, the amount of compensation available to the insured under his or her UIM coverage.

*Kvasnikoff,* Case No. A94–0318, Docket No. 19 at 5 (citations omitted). Regarding the first threshold issue, Judge Holland notes that "[s]tatutes which define *when* UIM coverage is 'triggered' or 'activated' fall into two classes;" those that define underinsured vehicle narrowly and those that define underinsured vehicle broadly. *Id.* at 6 (emphasis in original). Under the statutes that define the term narrowly, UIM coverage is not triggered "if the tortfeasor's liability limits are equal to or greater than the insured's underinsured coverage." *Id.* (quoting *State Farm Mutual Auto Ins. Co. v. Messinger,* 232 Cal. App.3d 508, 283 Cal.Rptr. 493, 501 (1991) and citing Stephen P. Means, Comment, *Underinsured Motorist Coverage in Iowa:* American States Ins. Co. v. Tollari, IOWA L.REV. 1569, 1576 (1986) ("The narrow coverage view is that a motorist is underinsured when the applicable liability coverage is less than the victim's underinsured policy limit.")). The second class of statutes, those that define underinsured vehicles broadly, trigger coverage whenever the injuries suffered by the insured are greater than the liability limits available under the tortfeasor's policy. *Id.* at 6–7.

Judge Holland also states that there exist two variations to the narrowly defined UIM statutes. *Id.* (citing Irvin E. Schermer, *Automobile Liability Insurance* § 35.04 (1994)). The first type is commonly referred to as the

dollar-for-dollar reduction provision. Under this provision, once UIM coverage is triggered, each dollar that is paid to the UIM insured by the tortfeasor reduces the amount of available UIM funds by one dollar. Hence, a UIM insured will receive no UIM coverage if the tortfeasor pays to the UIM insured an amount equal to or greater than the UIM limit. If the tortfeasor pays an amount less than the UIM limit, the available UIM limit will be reduced by such amount. The insurance statute in Alaska contained a dollar-for-dollar reduction provision prior to the 1990 amendment.

The second variation of narrow UIM statutes noted by Judge Holland is typified by ALASKA STAT. § 28.20.445. To quote Judge Holland, "Under the second type of statute, called 'excess' statute, the insured is entitled to the lesser of two amounts: (1) the limits of the UIM policy; or (2) the difference between the actual damages of the person covered by UIM coverage and the amount of compensation available from other sources, including the tortfeasor's liability coverage." *Id.* at 7–8 (citing *Mid–Century Ins. Co. v. Daniel,* 101 Nev. 433, 705 P.2d 156, 158 (Nev.1985)); *see also North River Ins. Co. v. Tabor,* 934 F.2d 461, 464 (3d Cir.1991) (under the "excess" type statute, the UIM insured "may ... recover underinsured motorist benefits until his policy limits are reached or he is fully compensated for his damages, whichever comes first.").

Although Judge Holland correctly classifies the triggering statutes into two categories, those which define underinsured vehicles narrowly and those which define underinsured vehicles broadly, he incorrectly characterizes the "dollar-for-dollar reduction" and the "excess" variations as sub-classes of the narrowly defined statutes. The narrow or broad defining provisions of insurance statutes determine whether UIM coverage is triggered,[4] whereas the "dollar-for-dollar re-

---

4. As stated by Judge Holland:

Courts faced with disputes over UIM coverage must address two threshold issues: (1) whether UIM coverage has been "triggered" in a particular instance because the insured's injuries were caused by an underinsured motor vehicle; and (2) if coverage has been triggered,

the amount of compensation available to the insured under his or her UIM coverage.

. . . . .

Statutes which define *when* UIM coverage is "triggered" or "activated" fall into two classes. The first type of statute defines the term "underinsured motorist" or "underinsured vehi-

duction" and "excess" provisions of insurance statutes determine the second issue, the amount of compensation. Only after the coverage determination is made can the amount of compensation be decided.

The language defining the term underinsured vehicle, which is section (h) in this case, determines whether or not UIM coverage is triggered. The language setting forth the nature of the coverage, which is section (b) in this case, determines the amount of UIM coverage the insured is entitled to collect if coverage is triggered. In his Order, Judge Holland concedes that section (h) is the triggering mechanism and section (b) determines the amount of compensation to be paid. *Id.* at 17–18 & 29. Ironically, however, Judge Holland nonetheless concludes that the two sections cannot reasonably be read together because in his view such a reading leads to absurd, arbitrary, inequitable, and unreasonable results. *Id.* at 18, 23, & 29. Judge Holland opines that in order to ensure that UIM insureds will be made whole (to the extent of their UIM limits), section (b) should determine both whether UIM coverage is triggered and also the amount of coverage insureds are to receive. *Id.* at 18–29. Judge Holland suggests that UIM coverage should be triggered whenever the injuries suffered generate damages in a dollar amount greater than the tortfeasor's policy limits. *Id.* Perhaps the legislature should have seen the issue in this light and collectively translated this vision into legislation. It appears that Judge Holland and I agree that the legislature did not expressly reach this conclusion. It is at this point that our analysis diverges.

Judge Holland finds that a comparison of sections (b) and (h) leads to only one conclusion, that ALASKA STAT. § 28.20.445, with section (b) and without section (h), produces a more satisfying result because it provides as close to full recovery as can be achieved through insurance. *Id.* Judge Holland analyzes ALASKA STAT. § 28.20.445 as it currently reads and then compares the results to those reached when analyzing the statute without section (h). *Id.* From this comparison, Judge Holland determines that the better statute is one which does not include the provisions of section (h). *Id.* This analysis confuses judging with legislating. The proper focus is not to compare the merits of the statute with section (b) and without section (h), to the merits of the statute with section (h), but rather, to determine whether operation of both sections leads to unreasonable results so that dual application is fatal to the operation of either section alone. *Peter,* 531 P.2d at 1267; *see also Hafling v. Inlandboatmen's Union of the Pacific,* 585 P.2d 870, 876 n. 20 (Alaska 1978) ("Legislative intent is the key and if the inconsistency between the two enactments is not fatal to the operation of either, the two may stand together and there will be no implied repeal."). Section (h) is the only triggering mechanism in the statute, and section (b) is the only section that determines the amount of compensation once coverage is triggered. Accordingly, although Judge Holland finds that section (h) must be removed to avoid absurdity, this Court finds that returning section (h) does not render section (b) absurd or irrational. At this point, judging must stop, or risk infringing on the legislature.

Judge Holland next proceeds to a discussion of the Alaska statute as amended in 1984. *Kvasnikoff,* Case No. A94–0318 CV (HRH), Docket No. 19 at 8. Judge Holland correctly notes that the 1984 statute contained a narrow definition of underinsured vehicle. *Id.* at 10 (citing section (h)). Continuing, Judge Holland states, "[T]he 1984 legislation provided that UIM coverage, once activated, was to be 'reduced' by payments from the tortfeasor's liability coverage and by payments from other sources ..." *Id.* at 11 (citing sections (a) and (b)). This analysis—looking to section (h) to determine activation of coverage and then to section (b) to determine the amount of coverage—is the same analysis used in this Court's original Order. Prior to the 1990 amendment, sec-

cle" narrowly, so that UIM coverage is denied "if the tortfeasor's liability limits are equal to or greater than the insured's underinsured coverage." The second type of statute defines the term "underinsured motorist" or "underin-

sured vehicle" broadly so that UIM coverage is triggered whenever a tortfeasor's motor vehicle liability limits are less than the UIM claimant's actual damages.
*Id.* at 5, 6 (citations omitted).

tions (a) and (b) contained the dollar-for-dollar reduction language, thus UIM insureds had very little coverage. Therefore, in 1984, section (h) was the triggering mechanism and section (b) determined the amount of coverage.

Transitioning from his discussion of the 1984 to a discussion of the 1990 amendment, Judge Holland states, "The legislature attempted to change the maximum **amount available to** a claimant who was injured by **an underinsured motorist.**" *Id.* at 12 (emphasis added). In enacting the 1990 amendments, the legislature afforded excess coverage to UIM insureds. In other words, once UIM coverage is triggered under section (h), the amount of coverage available is "excess" to the amount already recovered.[5] Thus, the statute now provides for excess coverage **once coverage is triggered.** The triggering mechanism, however, remained unchanged.

 Judge Holland essentially finds that Alaska's laws governing UIM coverage are unjust. He attempts to fix what he determines to be inequitable by judicially repealing statutory provisions. The proper question is not whether Judge Holland's decision to repeal section (h) makes ALASKA STAT. § 28.20.445 a better law. That is a legislative, not judicial, determination. To the contrary, the question before the Court is whether there exists any reasonable interpretation of sections (b) and (h) that will give effect to both. *Peter,* 531 P.2d at 1267. If such a reasonable interpretation exists, then we cannot reach the threshold for repeal by implication, which is to conclude that no rational legislator could have allowed section (h) to survive the amendment. *Id.* The judiciary was created to determine the will of

the people as articulated by the legislature. It is not the function of the judiciary to repeal legislation because, although the statute works in a reasonable manner, a judge believes a better statute could have been drafted. The Supreme Court has repeatedly stated that "the practice of deferring to rationally based legislative judgments 'is a paradigm of judicial restraint.'" *U.S. v. Lopez,* ─ U.S. ─, ─, 115 S.Ct. 1624, 1651, 131 L.Ed.2d 626 (1995) (Souter, dissenting) (quoting *FCC v. Beach Communications Inc.,* ─ U.S. ─, ─, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993)). Moreover,

> 'The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.'

*FCC v. Beach Communications Inc.,* ─ U.S. ─, ─, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993) (quoting *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979) (footnote omitted)). In a slightly different context, the justices of the Utah Supreme Court recently opined:

> [W]hatever may or may not be the conviction of mind, or the personal desires of this court, or the justices thereof, to determine such policy, our commitment is to the principle of judicial restraint, necessary and desirable under our system, which honors the doctrine of separation of powers of the three branches of our government. Therefore, it is not within the province of the courts to intrude upon the legislative prerogative and declare a statute unconstitutional unless it is determined to be so beyond a reasonable doubt.

---

**5.** Judge Holland correctly states, "The 1990 amendments to AS 28.20.445(a)-(b) were clearly intended to change Alaska law on UIM coverage from a 'reduction' type statute to an 'excess' type statute." *Id.* at 14. Providing support for this conclusion, Judge Holland quotes testimony from the chief sponsor of the 1990 amendment, Representative David Donley ("Donley"). *Id.* Prior to passage of the 1990 amendment, Donley stated that the changes would allow a UIM insured who was injured by someone with $25,000 of insurance to collect $100,000 from their own UIM policy if $100,000 was the policy limit. *Id.* Comparing the amendment to the pre-amend-

ment law, Donley stated that the old law would produce only a $75,000 payout from the UIM carrier, a net difference of $25,000. *Id.* In conclusion, stated Donley, "HB 429 is an attempt to better compensate consumers for their actual damages." *Id.* Donley's remarks before the legislature, preceding the 1990 enactment, are entirely consistent with this Court's interpretation of ALASKA STAT. § 28.20.445. Under this example, section (h) is triggered because the tortfeasor carries a policy smaller than the UIM policy. The entire $100,000 UIM policy is therefore available as excess coverage.

*Utah v. Mohi,* 901 P.2d 991, 1009 (Utah 1995) (citing *Stone v. Dep't of Registration,* 567 P.2d 1115, 1117 (Utah 1977)). The Alaska Supreme Court is in accord. *cf. State v. Wien Air Alaska, Inc.,* 619 P.2d 719, 720 (Alaska 1980) ("We are most reluctant to modify an existing legislative scheme in order to achieve an equitable result."). Judge Holland determined that the legislature, through "an unusual oversight," failed to amend the most significant portion of the statute. *Kvasnikoff,* Case No. A94–0318, Docket No. 19 at 18. Given the relationship between section (h), the triggering component, and section (b), the amount of compensation component, the Court concludes that it is not unreasonable to determine that the legislature enacted its will. If, however, the legislature did in fact make a gross "oversight," a matter about which I express no opinion, it now has an opportunity to correct its error. It is not the function of the judiciary to anticipate such a legislative correction.

### V. CONCLUSION

Based on the foregoing discussion and the Court's Order at Docket No. 24, the Court finds that UIM coverage in this case is not triggered under ALASKA STAT. § 28.20.445(h). The limits on Schram's liability policy are not greater than the limits on the Tumblesons' UIM policy, therefore precluding coverage under section (h)(1). Coverage is also not triggered under section (h)(2) because payments from Schram's policy were not made to persons other than the Tumblesons. Finally, the Court respectfully disagrees with the contrary decisions issued by Chief Judge Holland and Judge Sedwick of this District. As a result, the motion for reconsideration at **DOCKET NO. 35 is GRANTED** and Court's decision at **DOCKET NO. 24** is **AFFIRMED.**