683 P.2d 757

**Christopher A. McCLELLAN and Debra McClellan, husband and wife, Plaintiffs-Appellants,**

v.

**SENTRY INDEMNITY COMPANY, a Wisconsin corporation, Defendant-Appellee.**

**No. 1 CA–CIV 6260.**

Court of Appeals of Arizona, Division 1, Department D.

May 10, 1984.

McGroder, Pearlstein, Peppler & Tryon, P.C. by Patrick J. McGroder, III, Phoenix, for plaintiffs-appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.C. by Richard J. Woods and Larry L. Smith, Phoenix, for defendant-appellee.

## OPINION

HAIRE, Presiding Judge.

The primary issues in this appeal are (1) whether a clause which excludes government-owned vehicles from a policy's definition of "Uninsured Motor Vehicles" violates Arizona's Uninsured Motorist Act, A.R.S. § 20–259.01, and, if so, (2) whether the limits of uninsured motorist coverage available to the insured is the statutorily required amount set forth in A.R.S. § 28–1142 or the amount set forth in the policy for uninsured motorist coverage, in this case, $500,000.

Appellant, Christopher McClellan, a policeman employed by the City of Phoenix, was injured when a police car under the control of another policeman rolled forward and pinned his legs between two vehicles. The co-employee's motor vehicle liability insurer denied coverage pursuant to exclusions in its policy, and, for the purposes of this appeal, it is admitted that the co-employee's policy furnished no coverage for appellant's injuries.

The owner of the police car, the City of Phoenix, carried no motor vehicle liability insurance covering plaintiff's injuries, nor was it a self-insurer within the meaning of A.R.S. § 28–1222. Since the police car driven by the allegedly negligent co-employee was not covered by any motor vehicle liability insurance, appellant sought coverage under the uninsured motorist provisions of his own policy.

Appellant's policy, issued by Sentry Indemnity Company, provided uninsured motorist coverage with limits of $500,000 per person and per accident. Under the policy's uninsured motorist coverage, Sentry promised "to pay the damages you're legally entitled to receive from the owner or operator of an uninsured motor vehicle because of bodily injury." However, under a heading entitled "Excluded Uninsured Motor Vehicle", the policy excluded from its uninsured motorist coverage "a motor vehicle owned by any governmental authority or agency . . . ." Since the vehicle driven by the allegedly negligent co-employee was owned by the City of Phoenix, Sentry denied appellant's claim for uninsured motorist coverage. The trial court accepted Sentry's contention that the policy's exclusion of government-owned vehicles from the policy's uninsured motorist coverage was valid, and entered summary judgment in Sentry's favor.

On appeal from that judgment, appellant contends that the policy provision excluding government-owned vehicles from the policy's uninsured motorist coverage violates A.R.S. § 20–259.01 and the public policy underlying that statute. A.R.S. § 20–259.01(A) provides in part:

"[N]o automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in § 28–1142 ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom."

In reviewing the above-quoted statutory provision, we note that it requires that motor vehicle liability policies delivered or issued for delivery in this state must provide uninsured motorist coverage, and that the statute does not contain any provisions which purport to authorize the exclusion of government-owned vehicles from the required coverage. Sentry, however, relies on A.R.S. § 28–1221 to support its contention that Arizona's statutory scheme authorizes the exclusion of government-owned vehicles from the required uninsured motorist coverage. A.R.S. § 28–1221 provides in pertinent part:

"The provisions of *this chapter* shall not apply with respect to any motor vehicle owned by the United States, this state or any political subdivision of this state or any municipality therein ...." (Emphasis added).

The reference in A.R.S. § 28–1221 to "this chapter" is a reference to Chapter 7 of Title 28, A.R.S., which contains Arizona's Safety Responsibility Act (commonly referred to as the Financial Responsibility Act). A.R.S. § 20–259.01 which imposes the uninsured motorist requirement, is not a part of Chapter 7 or of Title 28, but rather is a part of Chapter 2 of Title 20, Arizona's insurance code.

Sentry's argument is that A.R.S. § 20–259.01 (the Uninsured Motorist Act) must be read *in pari materia* with the Financial Responsibility Act, citing *Chase v. State Farm Mutual Auto Ins. Co.*, 131 Ariz. 461, 641 P.2d 1305 (1982) to support this contention. Accordingly, Sentry's argument continues, since § 28–1221 excludes government-owned vehicles from the requirements of the Financial Responsibility Act the legislative intent must have been to exclude such vehicles from the requirements of A.R.S. § 20–259.01, the Uninsured Motorist Act.

■ We agree that to some extent the Financial Responsibility Act and the Uninsured Motorist Act must be read together. However, we do not believe that the exclusion of government-owned vehicles from the requirements of the Financial Responsibility Act was intended to apply to the Uninsured Motorist Act. First, we note that the only reference in A.R.S. § 20–259.01 to any portion of the Financial Responsibility Act is a provision which requires that uninsured motorist coverage be provided "in limits for bodily injury or death set forth in § 28–1142."[1] As previously noted, the exclusion in the Financial Responsibility Act for government-owned vehicles is set forth in § 28–1221, not § 28–1142. Additionally, we note that when enacting the Uninsured Motorist Act, the legislature considered the subject of exclusions, since a portion of the Act, A.R.S. § 20–259.01(C), expressly excluded from the Act's mandatory provisions policies providing coverage for vehicles "used as public or livery

---

1. All statutory references contained in this opinion are to statutory provisions in effect at the

time of the accident in question, 1979.

conveyances or rented to others or which are used in the business primarily to transport property or equipment." Accordingly, we must presume that if the legislature had intended to authorize additional exclusions, such as the removal of certain types of vehicles from the classification "uninsured motor vehicle," it would have done so.

Other courts have considered and rejected arguments substantially identical to that advanced by Sentry and have refused to read into their uninsured motorist acts exclusions which are set forth in separate Financial Responsibility Acts. Thus, in *Vaught v. State Farm Fire & Casualty Co.*, 413 F.2d 539 (8th Cir.1969), involving the application of Arkansas law, the court stated:

> "The appellant argues, however, that because the Uninsured Motorist Act refers to the Motor Vehicle Safety Responsibility Act for the purposes of prescribing the limits of coverage, it is fair to look to the latter Act to determine legislative intent as to exclusions. Since the Act contains an exclusion for vehicles owned by the government, ... the appellant argues that a similar exclusion should be read into the Uninsured Motorist Act.
>
> "The short answer to this contention is that if the legislature had so intended, it could have been as explicit with respect to the one as it was with the other." 413 F.2d at 541.

Similary, in *Johns v. Liberty Mutual Fire Ins. Co.*, 337 So.2d 830 (Fla.App.1976), the Florida court refused to read into Florida's Uninsured Motorist Act government vehicle exclusion provisions contained in that state's Financial Responsibility Act. The court stated:

> "Section 324.051 F.S. 1967, exempted governmental agencies from the financial responsibility provisions but there was no such exemption in the Uninsured Motorist Act. There is no reason to read the exclusion of government-owned vehicles in the Financial Responsibility Law *in pari materia* with the Uninsured Mo-

torist Statute. If the legislature had intended to exclude vehicles owned by the government from the Uninsured Motorist Act it could have explicitly done so." 337 So.2d at 831.

The Ohio Court of Appeals reached the same result in *Franey v. State Farm Mutual Auto Ins. Co.*, 5 Ill.App.3d 1040, 285 N.E.2d 151 (1972). *See also Higgins v. Nationwide Mutual Ins. Co.*, 291 Ala. 462, 282 So.2d 301 (1973); *Watters v. Dairyland Ins. Co.*, 50 Ohio App.2d 106, 361 N.E.2d 1068 (1976); *State Farm Mutual Auto Ins. Co. v. Carlson*, 130 Ga.App. 27, 202 S.E.2d 213 (1973); and *Hillhouse v. Farmers Ins. Co.*, 226 Kan. 68, 595 P.2d 1102 (1979). These cases demonstrate that the courts have uniformly refused to read into their Uninsured Motorist Acts any exclusion for government-owned vehicles where no such exclusion is expressed in the Act itself. In summary, in this case Arizona's Uninsured Motorist Act does not exclude government-owned vehicles from its requirements, and we will not read such an exclusion into the Act.

Sentry urges that the Uninsured Motorist Act is designed to close the gap left in the protection of motorists by drivers with neither insurance nor sufficient personal resources with which to respond in damages, and that therefore its scope ought to be limited by the Financial Responsibility Act, which does not apply to governmental entities. Although Sentry's observations are partially correct, we find nothing in the Uninsured Motorist Act which would exclude from its coverage uninsured motor vehicles based solely upon the sufficiency of the personal resources of the owner or driver. The Act appears to apply as equally to an uninsured millionaire as to an uninsured poverty-stricken indigent. We further note that in many instances, as in this case, it is not necessarily the financial responsibility of the governmental agency which is in question. Rather, the only party from whom the policyholder is "legally entitled to recover damages" might well be the driver of the uninsured government-

owned vehicle.[2]  In conclusion on this issue, we decline to accept Sentry's invitation to engage in judicial legislation by adopting an exclusion in addition to those express exclusions which the legislature has seen fit to include in A.R.S. § 20–259.01.  We hold that Sentry's attempted exclusion from the policy's uninsured motorist coverage of vehicles owned by governmental agencies conflicts with the requirements of Arizona's Uninsured Motorist Act, and therefore is invalid to the extent of that conflict.

We now consider Sentry's contention that if this court should determine that Sentry's exclusion of government-owned vehicles from the policy's uninsured motorist coverage is precluded by the Uninsured Motorist Act, the coverage relating to government-owned vehicles should be limited to the statutory amount required by the Act.  In this connection, the amount of uninsured motorist coverage required by the Act is $15,000 for bodily injury or death of one person, or $30,000 for bodily injury or death of two or more persons.  The limit of uninsured motorist coverage provided in Sentry's policy is $500,000.  Sentry relies on *Arceneaux v. State Farm Mutual Auto Ins. Co.*, 113 Ariz. 216, 550 P.2d 87 (1976) to support its contention that its liability should be limited to the statutorily required coverage.

In *Arceneaux*, the plaintiff was injured in an automobile accident as a result of her father's negligence.  At the time of the accident, the plaintiff was a member of her parents' household.  Her father had a motor vehicle liability policy which contained a "household exclusion" provision.  The household exclusion provision had been held void under prior Arizona case law.  The question presented in *Arceneaux* was whether the household exclusion provision

in the policy was wholly void or merely invalid to the extent that it was in conflict with the Financial Responsibility Act.  Thus, the issue was whether the exclusion in the policy was valid as to the coverage provided by the policy in excess of the statutorily required amount.  The court concluded that the household exclusion provision in the insurance policy was merely invalid to the extent that it conflicted with the principles established by the Financial Responsibility Act.  The court held that the policy need not provide more coverage than the Act required, and that the exclusionary clause was valid as to all coverage in excess of that amount.  In reaching its conclusion, the court relied on A.R.S. § 28–1170(G).  A.R.S. § 28–1170(G) reads:

"A policy which grants the coverage required for a motor vehicle liability policy may also grant lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and the excess or additional coverage shall not be subject to the provisions of this chapter.  With respect to a policy which grants the excess or additional coverage the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is required by this section."

The court held that this statute indicated that coverage provided by a policy in excess of the amount mandated by the Financial Responsibility Act need not be subject to the provisions of the Financial Responsibility Act.  *See also Rocky Mountain Fire & Casualty Co. v. Allstate Ins. Co.*, 107 Ariz. 227, 485 P.2d 552 (1971).

The rationale of *Arceneaux* is sound and clearly applicable to the facts of this case.  The uninsured motorist coverage required by A.R.S. § 20–259.01(A) for

---

**2.**  In this case, since appellant was injured in an accident arising out of and in the course of his employment, and has accepted workmen's compensation benefits, the provisions of the Workmen's Compensation Act preclude recovery from his employer, the City of Phoenix.  However, the accident occurred prior to the 1980 amendments to A.R.S. § 23–1024.  Therefore, the appellant would not be precluded from re-

covering damages from his negligent co-employee, the driver of the uninsured vehicle.  *See Kilpatrick v. Superior Court*, 105 Ariz. 413, 466 P.2d 18 (1970).  In any event, it cannot always be presumed that a governmental agency is financially able to respond in damages.  *See, e.g., Garcia v. City of South Tucson*, 135 Ariz. 604, 663 P.2d 596 (App.1983).

injury to one person is $15,000. Up to that amount, the government-owned vehicle exclusion in the Sentry policy violates the requirements of the Uninsured Motorist Act. Above that amount, coverage is not mandated and not controlled by the Uninsured Motorist Act. Instead, for coverage in excess of the amount required by the Uninsured Motorist Act, the parties should be permitted to make their own contractual arrangements. *See, e.g., State Farm Mutual Auto Ins. Co. v. Williams,* 123 Ariz. 455, 600 P.2d 759 (App.1979); *Transportation Ins. Co. v. Wade,* 106 Ariz. 269, 475 P.2d 253 (1970). We therefore hold that Sentry's liability to appellant under the policy is limited to $15,000, the statutory amount.

Appellant urges that he paid additional premiums for the higher uninsured motorist coverage limit of $500,000, and therefore he should be able to seek recovery up to that amount. Appellant's premise is erroneous. He did not pay any premium for coverage relating to damages caused by uninsured government-owned vehicles. Coverage exists, not because of the premium paid by appellant, but rather because of our holding that the policy exclusion is invalid to the extent of the statutorily mandated amount of uninsured motorist coverage.

The judgment of the trial court finding no coverage under the policy is reversed, and the matter is remanded for further proceedings consistent with this opinion.

KLEINSCHMIDT and OGG, JJ., concur.