899 P.2d 194

TRANSPORTATION INSURANCE COM-
PANY, an Illinois corporation, Plain-
tiff, Counterdefendant–Appellant,

v.

Ralph Ortega MARTINEZ and Nettie Ann
Martinez, husband and wife, Defen-
dants, Counterclaimants–Appellees.

No. 1 CA–CV 94–0040.

Court of Appeals of Arizona,
Division 1, Department C.

July 18, 1995.

Gallagher & Kennedy, P.A. by Don D.
Skypeck and Trevor H. Chait, Phoenix, for
plaintiff, counterdefendant-appellant.

Skousen, Skousen, Gulbrandsen & Pa-
tience, P.C. by William J. Skousen, John X.
Evans, Richard M. Gulbrandsen and David
L. Abney, Mesa, for defendants, counter-
claimants-appellees.

OPINION

GERBER, Judge.

Ralph Ortega Martinez and Nettie Ann
Martinez (the Martinezes), his wife, were
injured in an accident with a government-
owned vehicle driven by an unauthorized op-
erator. They were not legally entitled to
recover from the government entity, and the
operator was uninsured. The Martinezes
were insureds under a policy issued by
Transportation Insurance Company (CNA).
A policy exclusion limited uninsured motorist
coverage to the statutory minimum in acci-
dents involving an uninsured operator of a
government-owned vehicle. We hold that
this exclusion is void because it violates Ari-
zona's uninsured motorist statute.

## FACTS AND PROCEDURAL HISTORY

Ralph Martinez was driving and Nettie
Martinez was a passenger in a 1979 Jeep CJ7
owned by Palo Verde Machine Products
(Palo Verde). The owner of Palo Verde had
given the Martinezes permission to use the
Jeep.

The Jeep was rear-ended by a 1980 Chev-
rolet pickup truck driven by Thomas Loud-
hawk (Loudhawk), a National Guard employ-
ee, and owned by the United States National
Guard, Arizona Division. Loudhawk had sto-
len the vehicle and was intoxicated. He did
not have personal automobile liability insur-
ance. The Martinezes sustained damages in
the accident.

The Martinezes initially sued Loudhawk
and the National Guard in both the United
States District Court for Arizona and Mari-
copa County Superior Court. The district
court entered summary judgment in favor of
the National Guard because Loudhawk was

not acting within the course and scope of his employment with the National Guard at the time of the accident.

The Jeep was covered under a commercial automobile insurance policy issued to Palo Verde by CNA. The policy contained an endorsement for uninsured motorist (UM) coverage that provided UM benefit limits of $1,000,000, the same amount as the liability limits of the policy.

The Martinezes sought UM benefits under the Palo Verde policy. CNA offered them each $15,000 in UM benefits pursuant to a UM exclusion providing:

This insurance does not apply to any of the following:

* * * * * *

5. Damages sustained by the "insured" which the "insured" is legally entitled to recover from the owner or operator of any vehicle owned by a governmental unit or agency. However, this exclusion does not apply for coverage up to the limits of liability required by the Arizona financial responsibility law.

CNA asserted that the policy did not provide UM benefits for the Martinezes beyond the liability limits required by Arizona law because they had sustained damages from the operator of a government-owned vehicle.

CNA sought a declaratory judgment that Palo Verde's policy did not provide UM benefits for the Martinezes in excess of $15,000 each. The Martinezes filed a counterclaim that the policy provided uninsured motorist benefits of $1,000,000 for Mrs. Martinez's injuries because (1) Loudhawk was not an "operator" of a government-owned vehicle, (2) the government vehicle exclusion was inconsistent with CNA's statutory obligation under Arizona Revised Statutes Annotated (A.R.S.) section 20–259.01(B) to offer UM coverage up to the policy's liability limits and thus was invalid, and (3) the government vehicle exclusion violated their reasonable expectations of coverage.

On cross-motions for summary judgment, the trial court found the Martinezes bound by the benefits negotiated by the policy's owner and the insurer so that the doctrine of reasonable expectations did not apply to them. The court ruled:

[I]t is undisputed herein that the driver of the government vehicle had no authority to drive the vehicle, was outside the scope of government duties and had no personal insurance. Therefore, the government may have had no duty to the Defendants and the government may in this instance have no liability herein. This may foreclose the Defendants from any recovery from the government and place the vehicle in the status of a stolen vehicle. If so, then the government vehicle exclusion would not apply and only the driver's personal capacity may then be considered.

The court concluded that the lower UM coverage applied if the Martinezes recovered from the government, but if they were unable to recover from the government, the higher UM limit would apply. Because the parties stipulated that the Martinezes were foreclosed from recovery from the government, the trial court ruled that $1,000,000 of UM coverage was available to them and entered judgment for the Martinezes.

CNA appealed. We have jurisdiction pursuant to A.R.S. section 12–2101(B).

## DISCUSSION

■ CNA argues on appeal that the government vehicle limitation in the policy is valid because *McClellan v. Sentry Indemnity Co.*, 140 Ariz. 558, 683 P.2d 757 (App.1984), held that an insurer may limit UM coverage for government-owned vehicles to the statutory limits mandated by A.R.S. section 20–259.01. CNA argues that the government vehicle limitation reduces their coverage because they could file a claim against the government-owned truck's operator, even though they could not recover from the government. CNA also contends that it satisfied the requirements of A.R.S. section 20–259.01(B) (1990) [1] by offering Palo Verde UM

1. The 1993 amendments to A.R.S. section 20–259.01 included deletion of subsection (A) and redesignation of the other subsections. *See*

A.R.S. § 20–259.01 (Supp.1994). Our references to A.R.S. § 20–259.01(A) and (B) in this opinion

coverage in the same amount as the policy's liability limits and that it was not required to offer "exclusion-free" UM coverage.

The Martinezes respond that the trial court's characterization of the government truck as a stolen vehicle outside the exclusion was correct. They also argue that under A.R.S. section 20–259.01(B) CNA had to offer Palo Verde the $1,000,000 UM coverage liability limit for injuries suffered from an uninsured operator of a government vehicle. They contend that *McClellan* does not apply because, after *McClellan*, the UM statute was changed to require insurance companies to make written offers of UM coverage above the statutory required minimum up to the policy's liability limit.

The following portions of A.R.S. section 20–259.01(A) and (B), as they read in 1988, are relevant to this appeal:

A. No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in the policy or supplemental to the policy, in limits for bodily injury or death prescribed in subsection B of this section, but not less than the limits prescribed in § 28–1102, under provisions filed with and approved by the director, for the protection of persons insured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom....

B. Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder and by written notice offer the insured and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability

limits for bodily injury or death contained within the policy.... At the request of the insured, the insured may purchase and the insurer shall then include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy in any amount up to the liability limits for bodily injury or death contained within the policy but not less than the limits prescribed in subsection A of this section.

 Arizona's uninsured motorist statute "establishes a public policy that every insured is entitled to recover damages he or she would have been able to recover if the uninsured had maintained a policy of liability insurance in a solvent company." *Calvert v. Farmers Ins. Co. of Arizona*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). The purpose of the statute is to protect victims of financially irresponsible drivers. *Id.* We liberally construe the statute to carry out the intent of the legislature. *Id.*

In *McClellan*, a police officer (McClellan) was injured when a police car driven by another police officer rolled forward and pinned his legs between two vehicles. The other police officer's insurance policy did not cover McClellan's injuries, and the police car's owner, the City of Phoenix, did not carry liability insurance covering McClellan's injuries. His own insurance policy provided UM coverage with $500,000 limits but the policy excluded vehicles owned by any governmental authority.

The *McClellan* court held the exclusion of government-owned vehicles from UM coverage invalid to the extent it conflicted with Arizona's UM statutes. 140 Ariz. at 562, 683 P.2d at 761. It also held that because UM coverage required by A.R.S. section 20–259.01(A) for injury to one person was $15,000, the insurance company was liable to McClellan for that amount. *Id.* at 563, 683 P.2d at 762. The court noted that coverage was not mandatory above the statutorily required amount and was not controlled by the uninsured motorist act. *Id.*

are to the statute in effect in 1988. *See* A.R.S. § 20–259.01 (1990).

Although *McClellan* was decided in 1984, the accident at issue there occurred in 1979, and the court applied the UM statutes in effect at that time. *Id.* at 560 n. 1, 683 P.2d at 759, n. 1. The requirement that insurers notify their insureds in writing of additional UM coverage up to their liability limits was added by the legislature in 1981. *See* A.R.S. § 20–259.01(B); *Spain v. Valley Forge Ins. Co.,* 152 Ariz. 189, 192, 731 P.2d 84, 87 (1986). Thus, the *McClellan* court did not consider the effect of these new requirements on McClellan's UM coverage. Because the 1981 amendments would have changed the amount of UM coverage available, and in light of more recent Arizona Supreme Court cases applying the version of A.R.S. section 20–259.01(B) in effect in 1988, *McClellan* no longer controls.

The CNA exclusion at issue provides that where the insured is entitled to recover damages from the owner *or* operator of a government-owned vehicle, UM coverage is limited to amounts required by the Arizona financial responsibility law. The Martinezes were clearly insureds under the policy. Likewise, the parties agree that the Martinezes were not entitled to recover from the owner of the government vehicle. Thus, we are not concerned with whether that portion of the exclusion is valid. Instead, we consider only the validity of the UM exclusion of damages caused by an uninsured operator of a government-owned vehicle.

We agree with CNA that Loudhawk was the "operator" of the National Guard vehicle. The CNA policy does not define "operator." However, A.R.S. section 28–101(39) (Supp. 1994) provides that "operator" means "a person who drives or is in actual physical control over a motor vehicle upon a highway ..." Clearly, Loudhawk was the operator of the truck that struck the Martinez Jeep, and if the UM coverage limitation is valid, the UM benefits available to the Martinezes are limited to $15,000 each.

Three recent Arizona Supreme Court decisions are instructive. In *Spain*, the court examined an insurance policy provision offsetting the available UM coverage by amounts already recovered under the same policy. The court held the offset void because it violated the intent of the 1981 amendment to A.R.S. section 20–259.01(B) requiring each insured with equal UM and liability coverage to have both amounts available when the injury was caused by two negligent drivers. *Spain,* 152 Ariz. at 194, 731 P.2d at 89. The court concluded that "[a]ny attempt, by contract or otherwise, to reduce any part of this amount violates the statute." *Id.*

The *Spain* court pointed out that A.R.S. section 20–259.01(B) provides that insureds may purchase UM coverage up to the limits of their liability coverage. *Id.* at 193, 731 P.2d at 88. Thus, "[a]ny attempt to reduce this coverage from the amount the legislature has given the insured the right to buy violates the uninsured motorist statute and is therefore void as against public policy." *Id.* The court noted that section 20–259.01(B) raises the entitlement to UM coverage from the minimum limit set by subsection (A) to an amount equal to the liability limits bought by the insured; subsection (B) "allows the driver to protect himself and his passengers—most often his own family and friends—from the loss by injury caused by uninsured drivers to the same extent that he protects others from the risk of his own negligence." *Id.* at 192–93, 731 P.2d at 87–88.

In *Employers Mutual Casualty Co. v. McKeon,* 159 Ariz. 111, 765 P.2d 513 (1988), the Arizona Supreme Court considered the effect of a named driver exclusion on UM coverage. Employers, the insurer, had excluded the insureds' son, Jay, from "all coverage" under the policy. Jay was severely injured in an accident with an uninsured motorist while driving his brother's car. Jay and his father demanded that Employers pay uninsured motorist benefits to Jay. Employers took the position that the named driver exclusion precluded Jay from receiving UM benefits.

In disagreeing, the *McKeon* court held that the UM coverage exclusion was void as contrary to public policy. *Id.* at 115, 765 P.2d at 517. The court found that neither the text nor the intent of the UM statute permitted legislatively unrecognized exclusions such as the named driver exclusion.

*Id.* at 114, 765 P.2d at 516. The court noted that *Spain* and *Calvert* had already specifically condemned the whittling away of legislatively required coverage. *Id.* Thus, the court held the exclusion of UM coverage void.

The *McKeon* court next considered whether Jay was entitled only to the statutory minimum $15,000 coverage rather than the $300,000 UM policy limit Jay's parents had purchased (less the $20,000 paid by his brother's insurer). Because A.R.S. section 20–259.01(B) required that insurers offer UM coverage up to the policy's liability limits, the court held Jay entitled to the $300,000 UM coverage. The court reasoned:

> [W]e reject Employers' invitation to reduce the McKeons' uninsured motorist coverage to the statutory minimum of $15,000. We do so because the minimum issue limit is below the $300,000 in expanded coverage that the statute *required* that the insured be allowed to purchase *and that they actually did purchase.* Such a reduction of required coverage limits would contravene the mandatory offering terms of A.R.S. § 20–259.01, and is therefore impermissible on public policy grounds.

*Id.* at 115, 765 P.2d at 517 (emphasis in original).

Finally, the third case in this series, *Lowing v. Allstate Ins. Co., Inc.,* 176 Ariz. 101, 105, 859 P.2d 724, 728 (1993), held that an unidentified motorist who caused an accident fell within the meaning of A.R.S. section 20–259.01 even though no contact occurred between that motorist and the insured. *Lowing* held that an arbitrary exclusion of unidentified accident-causing drivers from UM coverage directly conflicted with the public policy of protecting people injured by financially irresponsible motorists. *Id.* at 106–07, 859 P.2d at 729–30. The court concluded that the physical contact requirement violated A.R.S. section 20–259.01 because exceptions to coverage "are not generally permitted unless expressly allowed by statute." *Id.* at 106, 859 P.2d at 729.

Following *Spain, Lowing* and *McKeon,* we conclude that the "operator of a government-owned vehicle" exclusion also constitutes an impermissible whittling away of legislatively required UM coverage. The fact that CNA did not entirely exclude the coverage but instead limited it to the statutory minimum does not save the provision. As *Spain* noted, A.R.S. section 20–259.01(B) raised the statutory entitlement—at the option of the insured—from the minimum up to the policy's liability limit purchased by the insured. Any attempt to reduce this coverage violates the UM statute.

Palo Verde purchased $1,000,000 in UM coverage. That amount was also the policy's liability limit and the amount Palo Verde was entitled by statute to buy. CNA's reduction of this required coverage limit contravenes the mandatory terms of A.R.S. section 20–259.01(B). We can think of no valid reason for this "operator" exclusion that overcomes the public policy rationale of the UM statute. If Loudhawk had been driving his own vehicle, the Martinezes would have been entitled to $1,000,000 in UM coverage. No logical reason appears to limit their recovery to $15,000 each merely because Loudhawk was driving a government vehicle. The provision limiting UM coverage when the insured may legally recover from the operator of a government-owned vehicle is inescapably void.

The trial court's judgment in favor of the Martinezes is correct although we reach our decision on grounds differing from the trial court. The Martinezes also argue on appeal that the trial court's judgment could be sustained on the basis of their reasonable expectations of UM coverage. Because we affirm the trial court on other grounds, we need not reach the reasonable expectations issue.

## CONCLUSION

We hold that the "operator of a government-owned vehicle" limitation on UM coverage is void. Accordingly, we affirm the trial court's judgment that $1,000,000 of UM coverage is available to the Martinezes.

In the exercise of our discretion, we also award attorney's fees to the Martinezes as the prevailing party on appeal pursuant to A.R.S. section 12–341.01; *U.S. Insulation, Inc. v. Hilro Const. Co.,* 146 Ariz. 250, 259, 705 P.2d 490, 499 (App.1985). The amount is to be determined following compliance with

Rule 21, Arizona Rules of Civil Appellate Procedure.

GARBARINO, P.J., and FIDEL, J., concur.