**Lyle R. RONNING, petitioner, Respondent,**

v.

**CITIZENS SECURITY MUTUAL INSURANCE COMPANY, Appellant.**

No. C3–96–1206.

Court of Appeals of Minnesota.

Dec. 31, 1996.

Thomas R. Thibodeau, Jerome D. Feriancek, Jr., Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for Appellant.

Mark A. Munger, Clure, Eaton, Butler, Michelson, Ferguson & Munger, P.A., Duluth, for Respondent.

Michael C. Snyder, Minnesota Trial Lawyers Association, Minneapolis, for Amicus Curiae.

Considered and decided by
SCHUMACHER, P.J., and KLAPHAKE and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Appellant Citizens Security Mutual Insurance Company challenges the district court's denial of its motion to. vacate an underinsured motorist arbitration award reached pursuant to Minn.Stat. § 572.18. We affirm.

## FACTS

Respondent Lyle Ronning was involved in a motor vehicle accident with a City of Duluth sand truck on January 4, 1993. Ronning settled his claim against the city and sought underinsured motorist coverage against his insurer, appellant Citizens Security Mutual Insurance Company. Pursuant to the applicable insurance policy, the action against the insurer was submitted to arbitration.

The policy directed each party to select an arbitrator. The two arbitrators then select a third, neutral arbitrator to complete the panel. Ronning named attorney Harry Newby, Jr. as his arbitrator and notified the insurer of this selection. Ronning received no response from the insurer with regard to the selection of an arbitrator. Thus, as a result of the insurer's inaction, respondent, pursuant to Minn.Stat. § 572.10, moved the district court to select attorney Michael Tierney as insurer's arbitrator.

After a hearing on the selection of arbitrators, at which the insurer did not appear, district court Judge David Bouschor of St. Louis County appointed Tierney as the insurer's arbitrator. The two arbitrators, Newby and Tierney, conferred and selected attorney Michael Lien as the neutral arbitrator.

The insurer moved for summary judgment and dismissal of the arbitration, arguing he was entitled to judicial intervention dismissing the arbitration claim, because the City sand truck, a government vehicle, was not an "underinsured" motor vehicle under the policy at issue. The insurer also asserted that the liability of the City is limited by statute, and thus, an underinsured motorist claim is statutorily prohibited.

The district court denied the insurer's motion for summary judgment and dismissal of the arbitration. Judge David Bouschor held that the restriction in the policy as to governmental vehicles defeats the purpose of the underinsured statute. The court further stated that such a restriction is against public policy.

On February 26, 1996, the arbitration matter was heard. The panel awarded respondent $260,000 in damages and his wife Roberta Ronning $20,000 in damages. Ronning submitted the arbitration decision to the district court for approval of the award. The insurer objected to such approval and moved the district court to vacate, arguing that the arbitrators exceeded their powers by issuing an award, as in doing so they determined that the city was underinsured. The insurer asserts that this determination is a question of law, proper for the courts to decide, not the arbitration panel. The insurer also argued that the arbitration award should be vacated under Minn.Stat. § 572.19, subd. 1(2), which states that grounds for vacating an arbitration award include the existence of partiality by an appointed neutral arbitrator or corruption in any of the arbitrators.

In an Order dated May 2, 1996, district court Judge Terry Hallenbeck of St. Louis County granted respondent's motion to approve the arbitration award and denied the insurer's motion to vacate. The court found that the panel of arbitrators did not exceed the scope of their authority, as they decided only questions of fact, namely fault and damages. The court stated that Judge Bouschor in his Order and Memorandum dated November 27, 1995, not the arbitration panel, determined the legal question that the governmental vehicle exclusion in the insurance policy was void as of public policy. The court also concluded that no conduct on part of the arbitrators constituted prejudicial miscon-

duct or bias sufficient to warrant vacatur. This appeal followed.

## ISSUES

1. Did the district court err in concluding that the government vehicle exclusion relied upon by the insurer was void as against public policy; and that Ronning was not limited by Minn.Stat. § 466.04 in the amount he was "legally entitled to recover" under the insurer's insurance policy?

2. Did the district court err in concluding that the arbitrator's failure to give notice of disclosure did not constitute prejudicial misconduct or bias sufficient to warrant vacatur of the arbitration award?

3. Did the district court fail to comply with Minn.Stat. § 572.10 by selecting an attorney suggested by respondent as appellant's arbitrator?

## ANALYSIS

### I. Government Vehicle Exclusion

The insurer argues that the district court erred in its interpretation of Minn.Stat. § 65B.49 and conclusion that the government vehicle exclusion in the insurer's policy was void as violative of public policy. The question of whether a statute and the language of an insurance policy provide coverage are questions of law that we review de novo. *Hibbing Education Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985); *State Farm Ins. Co. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992).

■ The insurer's policy provides that an "underinsured motor vehicle" does not include any vehicle "[o]wned by a governmental unit or agency." The insurer contends that this exclusion is enforceable under Minnesota law, contrary to the district court's conclusion. The district court determined that the government vehicle exclusion in the insurer's policy defeats the purpose of Minnesota's underinsured motorist statute. We agree.

The Minnesota legislature has mandated compulsory underinsured motorist coverage, which provides that

[n]o plan of reparation security may be renewed, delivered or issued for delivery, or executed in this state with respect to any motor vehicle registered or principally garaged in this state unless separate uninsured and underinsured motorist coverages are provided therein.

Minn.Stat. § 65B.49, subd. 3a(1) (1994).

Under Minnesota law, an underinsured vehicle is defined as "a motor vehicle or motorcycle to which a bodily injury liability policy applies at the time of the accident but its limit for bodily injury liability is less than the amount needed to compensate the insured for actual damages." Minn.Stat. § 65B.43, subd. 17 (1994).

When sections 65B.49, subd. 3a(1) and 65B.43, subd. 17 are read together, it is clear that the Minnesota legislature mandated all automobile insurance policies in the state to provide protection from uncompensated injury resulting from accidents involving "underinsured motorists." The statutes do not provide an exemption for vehicles owned by governmental units.

Minnesota courts have not previously ruled on the question of whether insurance providers can exclude government owned vehicles from underinsured motor vehicle coverage. However, a majority of states that have ruled on this issue have found that such exclusions are unlawful restrictions on mandatory coverage required under statute. *See Vaught v. State Farm Fire & Cas. Co.*, 413 F.2d 539 (8th Cir.1969); *Higgins v. Nationwide Mut. Ins. Co.*, 291 Ala. 462, 282 So.2d 301 (1973); *McClellan v. Sentry Indem. Co.*, 140 Ariz. 558, 683 P.2d 757 (App.1984); *Cropper v. State Farm Mut. Automobile Ins. Co.*, 671 A.2d 423 (Del.Super.1995); *Gabriel v. Minnesota Mut. Fire & Cas.*, 506 N.W.2d 73, 74 (N.D.1993). We agree with the reasoning behind these decisions, and hold that a government vehicle exclusion in an insurance policy is void as against public policy in the underinsured motorist context. *See Gabriel*, 506 N.W.2d at 74 (reasoning that "[w]here a statute does not provide for an exemption for governmental vehicles, a court will not rewrite uninsured or underinsured motorist coverage to provide for such an exemption").

In the Minnesota No–Fault Act, underinsured motorist coverage is defined as "coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury from owners or operators of underinsured motor vehicles." Minn.Stat. § 65B.45, subd. 19 (1994). The insurer further argues that Ronning does not fall within the underinsured motorist coverage mandated by Minn. Stat. § 65B.43, subd. 19, because Ronning was only "legally entitled to recover" from the City the amount set forth in Minn.Stat. § 466.04. In Minn.Stat. § 466.04, the Minnesota legislature limited the amount to recovery against a municipality for tort liability to $200,000.

The statutory language, "legally entitled to recover," is not defined in the Minnesota No–Fault Act and nothing in the Minnesota No–Fault Act indicates that the legislature intended for the limit on liability provided in Minn.Stat. § 466.04 to be applied to an insurer's underinsured motorist coverage.

Ronning suffered damages in excess of the maximum recovery permitted against the City under Minn.Stat. § 466.04, and the limitation of that recovery leaves Ronning with unsatisfied actual damages. By offering coverage to Ronning in the event of damage arising from the actions of a tortfeasor who was underinsured, the insurer accepted premiums for those unsatisfied damages. The insurer should not be shielded by Minn.Stat. § 466.04.

Minn.Stat. § 466.04 affords limited immunity, as it does not prohibit a party from bringing an action and obtaining a judgment against the tortfeasor as does absolute immunity. Thus, the immunity defense available under Minn.Stat. § 466.04 is not absolute within the meaning of the term "legally entitled to recover" so as to allow such a defense to be raised substantively by an insurance carrier.

Therefore, to conclude we hold that in spite of Minnesota's limitation of $200,000 for tort liability in Minn.Stat. § 466.04, respondent is "legally entitled to recover" the entire amount of their award.

## II. Arbitrator's Failure to Make Disclosures

The insurer argues that because Lien, the neutral arbitrator, failed to make the required disclosures regarding past relationships, the arbitration award should be vacated. We disagree.

The arbitration statute requires a neutral arbitrator to "disclose any relationships the person has with any of the parties, their counsel, insurers, or representatives and any conflict of interest, or potential conflict of interest, the person may have." Minn.Stat. § 572.10, subd. 2(b) (1994). We acknowledge that Lien, the neutral arbitrator, failed to give notices of disclosure under this statute. However, in order to vacate the arbitration award because of the lack of disclosure, there must be proof of one or more of the grounds stated in Minn.Stat. § 572.19. *See Pirsig v. Pleasant Mound Mut. Fire Ins. Co.,* 512 N.W.2d 342, 343 (Minn.App.1994).

Minn.Stat. § 572.19 provides that the court shall vacate an award where "[t]he award was procured by corruption, fraud or other undue means." If the neutral arbitrator "fails to disclose a *conflict of interest* or *material relationship,* it is grounds for vacating an award for fraud as provided in section 572.19." Minn.Stat. § 572.10, subd. 2(c)(3) (1994) (Emphasis added).

In this case, the neutral arbitrator did not disclose his relationship with the insurer's attorney. There is no evidence in the record that this relationship was a material relationship or a conflict of interest. In fact, the insurer admits in his brief that "[t]here is no suggestion that this neutral arbitrator's failure to disclose his involvement with appellant's counsel in some way prejudiced appellant."

Without such evidence we cannot vacate the arbitration award. *See Safeco Ins. Co. of America v. Stariha,* 346 N.W.2d 663, 666 (Minn.App.1984) ("A remote and unrelated attorney-client relationship between the neutral arbitrator and counsel for one of the parties is not a basis to vacate an arbitration award for undue means or evident partiality."). In this case, there are no facts to suggest that because of the neutral arbitrator's failure to make disclosures, any con-

flicts, corruption or misconduct impacted the arbitration decision. There is also no evidence in the record that shows the failure to disclose tainted the outcome of the arbitration. Thus, grounds to vacate the award because of the arbitrator's lack of disclosure do not exist.

### III. Selection of Appellant's Arbitrator

 The insurer argues that the district court failed to comply with Minn.Stat. § 572.10 by selecting attorney Michael Tierney as the insurer's arbitrator per Ronning's suggestion. The insurer alleges the court merely confirmed an arbitrator recommended by Ronning and did not "appoint" an arbitrator pursuant to Minn.Stat. § 572.10. Thus, the insurer asserts that the district court permitted the arbitration to go forward without selecting an arbitrator who could act on behalf of appellant and created the potential for partiality. We disagree.

The statute provides:

If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and a successor has not been duly appointed, the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of one specifically named in the agreement.

Minn.Stat. § 572.10, subd. 1 (1994).

It is common practice in the courts for judges to sign pre-made orders. It is presumed that judges do not sign these orders blindly, but with the law and statutory requirements in mind. Thus, without evidence to the contrary, it must be presumed that the district court's selection of the insurer's arbitrator was not just "rubber stamp" per Ronning's suggestion. But rather, it must be inferred that the district court was mindful of Minn.Stat. § 572.10 and appointed the insurer's arbitrator in accordance with the statute.

### DECISION

The district court did not err in concluding that the government vehicle exclusion is void as against public policy and that Ronning is not limited by Minn.Stat. § 466.04 in the amount he was "legally entitled to recover."

The district court did not err in concluding that the arbitrator's failure to give notice of disclosure did not constitute fraud within the meaning of Minn.Stat. § 572.19.

The district court's selection of an attorney suggested by Ronning was proper under Minn.Stat. § 572.10.

**Affirmed.**