CONTINENTAL WESTERN INSURANCE COMPANY, APPELLEE, V.
BARRY CONN AND MARILYN CONN, INDIVIDUALLY AND
AS HUSBAND AND WIFE, APPELLANTS.

629 N.W. 2d 494

Filed July 6, 2001.   No. S-00-129.

Richard L. Swenson for appellants.

Stephen S. Gealy and Darla S. Ideus, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

In this declaratory judgment action, Barry Conn and Marilyn Conn appeal the decision of the district court for Douglas County which determined that the schoolbus which struck Marilyn Conn was not an "underinsured vehicle" and, therefore, declared that Continental Western Insurance Company (Continental Western) was not required to make payment to the Conns pursuant to the underinsured motorist coverage provision in the policy Continental Western had issued to the Conns. We affirm.

## STATEMENT OF FACTS

The controlling facts are not in dispute. On April 24, 1995, Marilyn Conn was struck and injured by a bus owned and operated by an agent or employee of Douglas County School District 001, Omaha Public Schools (OPS), a political subdivision, and owned by OPS. In settlement of the Conns' claim, OPS, through its insurer, paid the Conns the total sum of $1 million. Under Nebraska law, the total amount recoverable against a political subdivision under the Political Subdivisions Tort Claims Act for claims arising out of an occurrence after November 16, 1985, is limited to $1 million for any person for any number of claims aris-

ing out of a single occurrence. Neb. Rev. Stat. § 13-926 (Reissue 1991). In addition to the settlement with OPS, the Conns sought coverage from Continental Western for their damages in excess of $1 million pursuant to the underinsured motorist coverage provision of an automobile liability policy that Continental Western had issued to the Conns on November 5, 1994. Under Nebraska law, pursuant to Neb. Rev. Stat. § 44-6407 (Cum. Supp. 1994) of the Uninsured and Underinsured Motorist Insurance Coverage Act, an "uninsured or underinsured motor vehicle shall not include a motor vehicle . . . (4) [w]hich is owned by any government, political subdivision, or agency thereof . . . ." Throughout this opinion, we generally use the word "government" to mean the state and its political subdivisions. Coverage was declined.

On October 9, 1997, Continental Western filed the present declaratory judgment action against the Conns. Continental Western prayed for a declaration and judgment that any claim of the Conns against Continental Western pursuant to the underinsured motorist coverage of the policy was barred by the Political Subdivisions Tort Claims Act. The Conns answered and prayed for a declaration that their claim against Continental Western was not barred by the Political Subdivisions Tort Claims Act and that Continental Western was indebted to them in an amount equal to the full underinsured motorist coverage provided in the policy.

A hearing was held October 1, 1999, at which the parties entered into evidence a stipulation in which they agreed that the only issue was as follows:

> "Where the defendants' damages exceed $1,000,000.00 as a result of Marilyn Conn's having been struck by a bus owned by the Omaha Public Schools and driven by its duly authorized agent, is the Omaha Public Schools an underinsured motorist within the meaning of the statutes of the State of Nebraska and the Continental Western Insurance Company policy issued to the defendants and in full force and effect at the time of the accident which gave rise to the defendants' original claim?"

The parties also stipulated and agreed to the following:

> 1. This Court has jurisdiction over the parties to and the subject matter of this action.

2. On November 5, 1994, Continental Western issued to Defendants Conn a policy of automobile liability insurance numbered AP68100 with effective dates of November 5, 1994 through November 5, 1995 and was in full force and effect on or about April 24, 1995. Said policy provided to Defendants Conn $100,000.00 in underinsured motorist coverage per person and $300,000.00 in underinsured motorist coverage per accident a copy of which is attached hereto, marked Exhibit A, and made a part hereof.

3. On April 24, 1995, Defendant Marilyn Conn was a pedestrian at or near the intersection of 28th and Dodge Streets in Omaha, Douglas County, Nebraska and was struck and injured by a bus owned by Douglas County School District 001 (OPS) and operated by its agent or employee.

4. As a result of the accident described in paragraph 3, above, OPS, through its insurer, paid the Defendants Conn, individually and as husband and wife, the total sum of one million dollars ($1,000,000.00) which amount is the maximum payable by or on behalf of OPS.

5. As defined in Neb. Rev. Stat. § 13-903(1), OPS is a political subdivision. The claim of De[f]endants Conn against OPS was, therefore, governed by the Nebraska Political Subdivisions Tort Claims Act set forth at Neb. Rev. Stat[.] §§ 13-902 et. seq.

6. Defendants Conn are, for purposes of resolution of the issue stated above, a single person with a single claim which arose as a result of the accident of April 24, 1995.

7. Continental Western has been called upon to provide coverage to Defendants Conn under the underinsured motorist coverage contained in their insurance policy to satisfy the claim of Defendants Conn in excess of the one million dollar amount previously paid to them by the insurer of OPS.

8. The applicable underinsured motorist coverage limit of the Continental Western Insurance policy issued to Defendants Conn is $100,000.00.

9. As a direct and proximate result of the accident described in paragraph 3 above, Defendants Conn have

incurred damages in excess of one million, one hundred thousand dollars ($1,100,000.00).

A copy of the Continental Western automobile liability policy issued to the Conns was received into evidence. The underinsured motorist coverage section of the policy included, inter alia, the following provisions:

We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

. . . .

"Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is either:

1. Not enough to pay the full amount the "insured" is legally entitled to recover as damages; or

2. Reduced by payments to others injured in the accident to an amount which is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

. . . .

2. Owned by any governmental unit or agency.

On January 7, 2000, the district court entered an order containing its findings which was favorable to Continental Western. Specifically, the district court found:

1. Omaha Public Schools (OPS) is immune from liability over one million dollars.

2. OPS has a one million dollar liability insurance policy.

3. The one million dollars of liability insurance on OPS was paid to the Defendants in settlement of their claim.

4. The underinsured motorist provision in the Continental Western policy issued to the Defendants applies only when there is a lack of liability insurance on the involved vehicle.

5. Since OPS has liability insurance in an amount equal to its maximum liability, its vehicle is not underinsured.

The district court declared that Continental Western was "not required to make payment to the [Conns] pursuant to the underinsured motorists coverage provision in its policy" and entered judgment accordingly. The Conns appealed.

## ASSIGNMENTS OF ERROR

The Conns assert that the district court erred (1) in finding that the underinsured motorist provision of the policy only applied when there was a lack of liability insurance, (2) in finding that the OPS vehicle was not underinsured because it had liability insurance in the amount required by law, (3) in failing to find that § 44-6407(4) was either unconstitutional or void as against public policy, and (4) in failing to find that the provision of the insurance policy excluding government-owned vehicles from the definition of underinsured vehicle was void as against public policy.

## STANDARD OF REVIEW

■ In an appeal from a declaratory judgment, an appellate court, regarding questions of law, has an obligation to reach its conclusion independently of the conclusion reached by the trial court. *Simons v. Simons*, 261 Neb. 570, 624 N.W.2d 36 (2001).

## ANALYSIS

The Conns argue on appeal that although the $1 million limitation of the Political Subdivisions Tort Claims Act limits the amount OPS must pay, it does not limit the total recovery which they may obtain. The Conns contend they are entitled to further recovery under the terms of the underinsured provisions of the policy with Continental Western. Finally, the Conns argue that both the policy and statute which provide that underinsured motor vehicles do not include vehicles owned by a governmental unit are void and unenforceable as unconstitutional and as against public policy.

In response, Continental Western contends that the underinsured motorist carrier's obligation is identical to, but not broader than, the tort-feasor's and that because OPS can have no legal responsibility beyond $1 million pursuant to law, neither can Continental Western. Continental Western also argues that the OPS bus was not an underinsured motor vehicle. Continental

Western advances several arguments as to why the government-owned exclusion provisions of the policy and statute are not against public policy. We agree with Continental Western that the OPS bus was not an underinsured motor vehicle in this case.

The underinsured motorist coverage provision of the automobile liability policy Continental Western issued to the Conns provides that "[w]e will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an *underinsured motor vehicle* because of 'bodily injury': 1. Sustained by an 'insured'; and 2. Caused by an accident." (Emphasis supplied.)

The Uninsured and Underinsured Motorist Insurance Coverage Act as a general matter requires that automobile liability insurance policies provide for protection against uninsured and underinsured motor vehicles. Neb. Rev. Stat. §§ 44-6401 to 44-6414 (Cum. Supp. 1994). The act provides at § 44-6408(1) as follows:

> No policy insuring against liability imposed by law for bodily injury, sickness, disease, or death suffered by a natural person arising out of the ownership, operation, maintenance, or use of a motor vehicle within the United States, its territories or possessions, or Canada shall be delivered, issued for delivery, or renewed with respect to any motor vehicle principally garaged in this state unless coverage is provided for the protection of persons insured who are legally entitled to recover compensatory damages for bodily injury, sickness, disease, or death from . . . (b) the owner or operator of an *underinsured motor vehicle* . . . .

(Emphasis supplied.)

Elsewhere, § 44-6407 of the act provides that "an underinsured motor vehicle shall not include a motor vehicle . . . (4) [w]hich is owned by any government, political subdivision or agency thereof . . . ."

■ In order to be entitled to underinsured motorist coverage under the terms of both the policy and the Uninsured and Underinsured Motorist Insurance Coverage Act, an insured must be legally entitled to recover compensatory damages from the owner or operator of an "underinsured motor vehicle." In the present case, in order for the Conns to be entitled to underinsured

motorist coverage with respect to the April 24, 1995, accident, they must satisfy the following conjunctive requirements: (1) they must be legally entitled to recover damages in excess of $1 million from OPS and (2) the bus owned by OPS must be an "underinsured motor vehicle." For the reasons set forth below, we conclude under both the policy issued by Continental Western and the Uninsured and Underinsured Motorist Insurance Coverage Act that the bus owned by OPS was not an "underinsured motor vehicle" and that, therefore, the Conns cannot recover under the underinsured provisions of the policy. Accordingly, we need not comment on the parties' arguments regarding the "legally entitled to recover" language in the policy and § 44-6408(1).

As noted above, in order to recover under the underinsured motorist coverage policy provision, the Conns needed to establish that the bus owned by OPS was an "underinsured motor vehicle." The policy in the present case specifically excludes from the definition of "underinsured motor vehicle" any vehicle "[o]wned by any governmental unit or agency." The parties in this case stipulated that the bus which struck Marilyn Conn was owned by OPS. The parties also stipulated that OPS is a political subdivision. Based on the evidence, the bus was a vehicle owned by a governmental unit or agency and therefore was excluded from the definition of "underinsured motor vehicle" under the terms of the policy.

Similarly, the Uninsured and Underinsured Motorist Insurance Coverage Act provides that an "underinsured motor vehicle shall not include a motor vehicle . . . (4) [w]hich is owned by any government, political subdivision or agency thereof . . . ." § 44-6407(4). Thus, the OPS bus which struck Marilyn Conn was excluded from the definition of "underinsured motor vehicle" for purposes of the insurance requirements of the Uninsured and Underinsured Motorist Insurance Coverage Act.

The Conns argue that notwithstanding the fact that the OPS bus was clearly excluded from the definition of "underinsured motor vehicle" under the policy, the provision of the policy excluding vehicles owned by a governmental unit or agency is void as against public policy. The Conns cite to various cases from other jurisdictions wherein the courts have held that various

provisions in automobile insurance policies excluding vehicles owned by governmental units from the definition of "uninsured motor vehicles" or "underinsured motor vehicles" are unenforceable contract restrictions because they are at odds with mandatory uninsured or underinsured motorist coverage required by statute, the purpose of which statute is to protect citizens from damages caused by uninsured or underinsured motorists. See, *Vaught v. State Farm Fire & Casualty Company*, 413 F.2d 539 (8th Cir. 1969); *Ronning v. Citizens Sec. Mut. Ins. Co.*, 557 N.W.2d 363 (Minn. App. 1996); *Cropper v. State Farm Mut. Auto. Ins. Co.*, 671 A.2d 423 (Del. Super. 1995); *Gabriel v. Minnesota Mut. Fire and Cas.*, 506 N.W.2d 73 (N.D. 1993); *McClellan v. Sentry Indem. Co.*, 140 Ariz. 558, 683 P.2d 757 (Ariz. App. 1984); *Higgins v. Nationwide Mutual Insurance Company*, 291 Ala. 462, 282 So. 2d 301 (1973). Each of these decisions is distinguished from the instant case which must be decided with reference to Nebraska's statutes.

Unlike Nebraska's Uninsured and Underinsured Motorist Insurance Coverage Act which excludes government-owned vehicles from the definition of "underinsured motor vehicle," § 44-6407(4), the state statutes requiring uninsured or underinsured motorist coverage involved in the cases relied on by the Conns made no exclusion for government-owned vehicles. The absence of a government-owned exclusion from such statutes was fundamental to the decisions finding that the government-owned exclusion in the policies was unenforceable. In this regard, we note that the Court of Appeals for the Eighth Circuit stated that "[t]he [Arkansas] Uninsured Motorist Act does not specifically exclude governmentally-owned vehicles." *Vaught*, 413 F.2d at 541. The North Dakota Supreme Court stated that "[w]here statute does not provide for an exemption for governmental vehicles, a court will not rewrite uninsured or underinsured motorist coverage to provide for such an exemption." *Gabriel*, 506 N.W.2d at 76 (quoted in *Ronning v. Citizens Sec. Mut. Ins. Co., supra*). The Delaware Superior Court stated that "Delaware's statutory determination of what is included under the term 'uninsured vehicle' does not specifically exclude any class of vehicles." *Cropper*, 671 A.2d at 427. The Arizona Court of Appeals stated that "we must presume that if the legislature had intended to authorize additional

exclusions, such as the removal of certain types of vehicles from the classification 'uninsured motor vehicle,' it would have done so." *McClellan*, 140 Ariz. at 561, 683 P.2d at 760. The Alabama Supreme Court stated that "in the absence of any language in the act authorizing the exclusion, no exclusion of governmentally owned motor vehicles may be created in the policy." *Higgins*, 291 Ala. at 466, 282 So. 2d at 305.

■ Unlike the cases cited by the Conns involving statutes which do not exclude government-owned vehicles from the definition of "uninsured motor vehicle" or "underinsured motor vehicle," the instant case is more comparable to the statutory analysis employed in *Jones v. Southern Farm Bureau Cas. Co.*, 251 S.C. 446, 163 S.E.2d 306 (1968), and *Francis v. Intern. Serv. Ins. Co.*, 546 S.W.2d 57 (Tex. 1976), each of which involves statutes, albeit pertaining to uninsured motorists, that are more similar to the Nebraska statutory structure. In *Jones*, the South Carolina Supreme Court held that a government-owned exclusion in an insurance policy's uninsured motorist coverage was valid because South Carolina's Motor Vehicle Safety Responsibility Act, which generally required that motor vehicles be insured, excluded government-owned vehicles from the scope of the act, and the uninsured motorist insurance statutory provisions were a component of this act. The South Carolina Supreme Court held that such exclusion also excluded government-owned vehicles from the definition of " 'uninsured motor vehicle.' " 251 S.C. at 455, 163 S.E.2d at 310. In *Francis*, the Texas Supreme Court held that a government-owned vehicle exclusion in a standard insurance form approved by the Texas State Board of Insurance was valid because the Texas uninsured motorist statutes authorized the board to exclude certain motor vehicles from the definition of " 'uninsured motor vehicle.' " 546 S.W.2d at 61. Nebraska's Uninsured and Underinsured Motorist Insurance Coverage Act specifically excludes government-owned vehicles from the definition of "underinsured motor vehicle" and thus clearly permits exclusion of government-owned vehicles from the definition of "underinsured motor vehicle" in an automobile insurance policy. Nebraska's act excludes government-owned vehicles, as does the insurance policy in this case; the exclusion in the policy therefore is not at odds with the act.

■ We have stated that "[i]t is the function of the Legislature through the enactment of statutes to declare what is the law and public policy of this state." *Clemens v. Harvey*, 247 Neb. 77, 82, 525 N.W.2d 185, 189 (1994). The exclusion in the insurance policy cannot be void as against public policy when it mirrors the statutory exclusion and when the statute, which has not been found wanting, is the Legislature's expression of the public policy of this state. The Conns' argument that the exclusion in the insurance policy is void as against public policy is unavailing.

In the instant case, the motor vehicle involved was owned and operated by a political subdivision. The Motor Vehicle Safety Responsibility Act, which generally requires that motor vehicles be insured, specifically provides that the "Motor Vehicle Safety Responsibility Act shall not apply with respect to any motor vehicle owned by the United States, the State of Nebraska, any political subdivision of this state, or any municipality therein." Neb. Rev. Stat. § 60-561 (Reissue 1998). Reading this provision in § 60-561 in pari materia with the government-owned exclusion in § 44-6407(4), see *In re Estate of Sutherlin*, 261 Neb. 297, 622 N.W.2d 657 (2001), the exclusion of government-owned vehicles from the definition of "underinsured motor vehicle" in § 44-6407(4) of the Uninsured and Underinsured Motorist Insurance Coverage Act is consistent and harmonious with the provisions in the Motor Vehicle Safety Responsibility Act which exempts vehicles owned by the state from the insurance requirements of the Motor Vehicle Safety Responsibility Act.

Although the purposes of uninsured and underinsured coverage do not entirely coincide, see 3 Alan I. Widiss & Josephine R. Witte, Uninsured and Underinsured Motorist Insurance §§ 39.1 to 39.3 (rev. 2d ed. 2001), we have observed that both "[l]aws requiring uninsured or underinsured motorist coverage were enacted for the benefit of innocent victims of financially irresponsible motorists." *Hood v. AAA Motor Club Ins. Assn.*, 259 Neb. 63, 68, 607 N.W.2d 814, 818 (2000). See, also, *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981). We have stated in an underinsured motorist case that the purpose of the act is to place a person injured by an underinsured motorist in the same position he or she would have been in had that individual been in an accident involving a person with

adequate coverage. *Muller v. Tri-State Ins. Co.*, 252 Neb. 1, 560 N.W.2d 130 (1997). The Washington Supreme Court has stated in an underinsured case that the purpose of underinsured motorist coverage is "to protect victims from financially irresponsible motorists by allowing them to recover the damages they would have received had the responsible party maintained liability insurance." *Bohme v. PEMCO Mut. Ins. Co.*, 127 Wash. 2d 409, 419, 899 P.2d 787, 792 (1995).

In the instant case, Marilyn Conn was struck by a bus owned and operated by a political subdivision. Historically, due to sovereign immunity, such tort-feasor was immune from suit. *King v. State*, 260 Neb. 14, 614 N.W.2d 341 (2000). Insurance is not required of the political subdivision under the Motor Vehicle Safety Responsibility Act, § 60-561, and government-owned vehicles are excluded from the definition of "underinsured motor vehicle" under § 44-6407(4) of the Uninsured and Underinsured Motorist Insurance Act. The State has waived sovereign immunity as to tort actions brought against a political subdivision under § 13-926, but the recoverable amount is limited to $1 million.

The Supreme Court of Texas observed that "[t]he purpose of the [uninsured motorist] Act is to protect insureds against negligent, financially irresponsible motorists. It was not designed as a system for giving relief to people who cannot recover from a tort-feasor because of sovereign immunity." *Francis v. Intern. Serv. Ins. Co.*, 546 S.W.2d 57, 61 (Tex. 1976). In the instant case, to permit the Conns who have received $1 million from OPS to recover an additional $100,000 under the underinsured policy provision would exceed the $1 million limit which the Legislature has set as a maximum recovery where the tort-feasor is a political subdivision. See § 13-926. The Nebraska statutory scheme limits the amount recoverable against a political subdivision to $1 million directly, § 13-926, and precludes a potential additional recovery indirectly by excluding government-owned vehicles from the definition of uninsured and underinsured vehicles in § 44-6407(4). In this case, neither § 44-6407(4) nor the underinsured policy at issue are against public policy.

The Conns further argue to this court that the exclusion for government-owned vehicles contained in § 44-6407(4) is

unconstitutional. On the record before us, the Conns failed to properly raise the asserted challenge to the constitutionality of § 44-6407(4) before the district court. A constitutional question not properly raised in the trial court will not generally be considered on appeal. *Alegent Health Bergan Mercy Med. Ctr. v. Haworth*, 260 Neb. 63, 615 N.W.2d 460 (2000). We therefore do not consider the Conns' argument that § 44-6407(4) is unconstitutional.

## CONCLUSION

Marilyn Conn was struck by an OPS bus on April 24, 1995. By virtue of a limited waiver of sovereign immunity, the Conns recovered a $1 million settlement from OPS. One million dollars is the maximum recovery allowed under § 13-926 of the Political Subdivisions Tort Claims Act. The Conns, claiming damages of greater than $1 million, sought an additional $100,000 under the underinsured motorist provisions in the Continental Western policy held by the Conns. The district court concluded that Continental Western was not liable to the Conns because the OPS bus was not an "underinsured motor vehicle."

The insurance policy at issue excluded underinsured motorist coverage on a vehicle owned by any governmental unit or agency. Such exclusion is consistent with § 44-6407(4) of the Uninsured and Underinsured Motorist Insurance Coverage Act, which states that an "underinsured motor vehicle" shall not include a motor vehicle which is owned by any government, political subdivision, or agency thereof. The exclusion in this case is not against public policy, and the Conns' recovery is limited to $1 million. The district court was correct when it declared that Continental Western was not required to make payment to the Conns pursuant to the underinsured motorist coverage provision in its policy. We, therefore, affirm.

AFFIRMED.